UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR CRUZ, on behalf of himself and others similarly situated<br><br>        Plaintiff,<br><br>    v.<br><br>SKY CHEFS, INC. a corporation; and DOES 1 to 100, Inclusive.<br><br>        Defendants.<br>_____/ | No. C-12-02705 DMR<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

    Plaintiff Cesar Cruz moves for preliminary approval of a class action settlement. [Docket No. 65.] Defendant Sky Chefs, Inc. does not oppose the motion. The court conducted a hearing on this matter on December 18, 2013, and then held the motion in abeyance while Plaintiff filed supplemental briefing. [Docket Nos. 76, 79.] For the following reasons, the court **denies** Plaintiff's motion.

## I. BACKGROUND

### A. Litigation History

    Sky Chefs, a business which provides in-flight food and beverage catering services to numerous airline carriers within the United States, hired Plaintiff Cesar Cruz ("Plaintiff") in July 1996 as an assembler. Murray Decl. [Docket No. 38-1] at ¶¶ 2, 6. Plaintiff filed this putative class action on March 16, 2012 in Alameda County Superior Court. [*See* Docket No. 1 at 2.] On May 23, 2012, Plaintiff filed an amended complaint stating nine California state law causes of action against Defendant and LSG

Lufthansa Service Holding AG, dba LSG Sky Chefs.[1] On May 25, 2012, Sky Chefs removed the case to federal court, basing federal jurisdiction on the Class Action Fairness Act, 28 U.S.C. § 1332(d). [Docket No. 1.] On October 5, 2012, Defendant moved to dismiss the amended complaint; the court denied the motion to dismiss on December 21, 2012. [Docket Nos. 20, 30.] On January 16, 2013, Plaintiff filed a second amended complaint. On February 21, 2013, Defendant moved to dismiss the second amended complaint; the court denied the motion to dismiss on May 6, 2013. [Docket Nos. 38, 50.]

As part of the parties' settlement agreement, Plaintiff has filed a third amended complaint ("TAC"). [Docket No. 72.] The TAC, which is the operative complaint, brings ten causes of action against Defendant: (1) failure to pay wages for compensable work at minimum wage pursuant to California Labor Code §§ 1194 and 1197, (2) failure to pay earned wages for compensable time in violation of California Labor Code § 204, (3) failure to pay overtime wages at the proper rate under California Labor Code §§ 510 and 1194 and California Industrial Welfare Commission Wage Order 9-2001 (the "wage order"), (4) failure to provide required meal periods pursuant to California Labor Code §§ 226.7 and 512 and the wage order, (5) failure to provide timely meal periods in violation of California Labor Code §§ 226.7 and 512 and the wage order, (6) failure to provide more than two rest periods in violation of California Labor Code §§ 226.7 and 512 and the wage order, (7) failure to provide complete and accurate wage statements in violation of California Labor Code § 226, (8) failure to pay all wages timely upon separation of employment in accordance with California Labor Code §§ 201 and 202, (9) unfair competition in violation of California Business and Professions Code § 17200, and (10) a request for civil penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 *et seq.* TAC at ¶¶ 37-112. The fifth and sixth claims were not in the previous complaint and apparently were added during the settlement negotiations.

**B. Discovery and Mediation**

The parties have engaged in formal and informal discovery and have conducted what they describe as an extensive investigation into the facts and law at issue. Lavi Decl. [Docket No. 65-1] ¶¶

---

[1] LSG Lufthansa Service Holding AG dba LSG Sky Chefs has since been dismissed from this action. *See* Docket No. 49.

6-7. Plaintiff propounded written discovery. *Id.* at ¶ 7. In response, Defendant produced documents and detailed information regarding class data, including putative Class Members' payroll records, timesheets, and other payroll information. *Id.* Defendant has also disclosed policies and procedures related to meal and rest breaks, work time, recording time, and other workplace policies applicable to Plaintiff's class claims. *Id.* In addition, Defendant conducted an investigation into the facts and law, including a review of the claims and applicable law, and interviews with its employees. *Id.* at ¶ 8. The parties also agreed to conduct informal discovery wherein Defendant provided Plaintiff with a random sampling of class members' timecards during the class period. *Id.* at ¶¶ 7-8. Plaintiff retained an expert to assist in analysis of the class data. *Id.* Plaintiff's counsel spent $2,450 on expert fees. *Id.* at ¶ 23.

After a period of discovery, the parties participated in a day-long mediation on June 5, 2013, before Jeff Krivis, Esq. *Id.* at ¶ 6. The parties were not able to reach a settlement at the mediation. *Id.* at ¶¶ 6, 12. After the mediation, the parties continued to negotiate, with the assistance of the mediator, and agreed to the terms of the settlement approximately ten weeks after the mediation. *Id.* at ¶ 6. Plaintiff then filed an unopposed motion for preliminary approval of a class action settlement.

## II. THE SETTLEMENT AGREEMENT

The complete terms of the proposed settlement agreement are set forth in the Stipulation and Settlement Agreement ("Agreement"). Lavi Decl. Ex. 1. The Agreement provides for a principal settlement class defined as follows:

> "Class" or "Class Member" or "Class Members" means any current or former hourly, non-exempt employee of Sky Chefs who performed paid work for Sky Chefs in California from March 16, 2008 up to December 12, 2013, or if such person is incompetent or deceased, the person's guardian, executor, heir or successor in interest.

Agreement at 3. The parties estimate that there are approximately 3,097 individuals in the class. Motion at 14.

**A. Settlement Amount and Release of Claims**

3

Under the terms of the settlement, in exchange for a release of claims[2] against Defendant, Defendant will pay a Gross Settlement Amount of $1,750,000. The Gross Settlement Amount is non-reversionary[3] and shall include participating Class Members' claims and payroll taxes, Class Counsel Fees and Costs, Enhancement Payment to Class Representative Plaintiff, payment to the Labor and Workforce Development Agency (LWDA) for PAGA penalties, and Settlement Administration Costs. Agreement at 18:4-21:16.

The total portion of the Gross Settlement Amount to be paid to "Authorized Claimants," or Class Members who file a valid and timely Claim Form with the Settlement Administrator to register their claim for a Settlement Payment,[4] will be equal to the Gross Settlement Amount less (1) Class Counsel Fees and Costs, (2) Enhancement Payment, (3) LWDA Payment, and (4) Settlement Administration Costs, which would result in a total class payout of approximately $1,156,500 ("Distributable Amount"). Agreement at 2:17-19, 19:1-8. Each of these deductions is explained in greater detail below.

**1. Class Counsel Fees and Costs: $525,000**

Class Counsel will request payment of $525,000 for Class Counsel Fees and an amount not to exceed $13,000.00 for Class Counsel Costs. Agreement at 21:25-22:5.

**2. Settlement Administration Costs: $33,000**

---

[2] The Agreement states that Defendant will pay the settlement amount "in exchange for the full and final settlement and release of any and all claims by the Plaintiff individually and on behalf of the class that were made, or that could have been made based on the facts alleged in the operative Complaint in this Action." Agreement at 1:11-14. The release provision states that "all Class Members who do not submit valid and timely written Requests for Exclusion (Opt-Out), fully release and discharge the Released Persons from all Released Claims The Agreement also defines "Released Claims" to mean "any and all claims, debts, liabilities, demands, obligations, guarantees, coss, expenses, attorneys' fees, damages or causes of action which relate to any claims which were alleged or could have been alleged based on the facts in the Complaint filed by Plaintiff, on his behalf and on behalf of the Class Members in this Action during the Class Period, including the date of preliminary approval of this proposed Settlement under any federal, state or local law . . . ." Agreement at 7-8.

[3] The settlement is "non-reversionary" because the entire Distributable Amount will be distributed to only Authorized Claimants and any settlement checks remaining un-cashed 180 calendar days after issuance will be void and escheated to the State of California pursuant to the California Code of Civil Procedure Section 1513. Agreement at 23:23-26.

[4] "Settlement Payment" refers to the payment to any Authorized Claimant pursuant to the terms of the Agreement. Agreement at 9:11-9:12.

The parties have selected CPT Group, Inc., to act as Settlement Administrator in this action. Agreement at 22:20-21. The Agreement contemplates an amount not to exceed $33,000 to compensate all reasonable costs incurred by the Settlement Administrator in administration of the Agreement. Agreement at 18:25-27.

**3. Representative Plaintiff Enhancement: $15,000**

Subject to court approval, Plaintiff will make an application for $15,000 as an enhancement and compensation for his general release pursuant to California Civil Code Section 1542 and for his time and effort in prosecuting the matter. Agreement at 21:20-21:24.

**4. LWDA Payment: $10,000**

Under the Agreement, $10,000 will be allocated to penalties paid to the LWDA in satisfaction of claims for penalties owed to the agency under the PAGA, with 25% of the amount to be distributed to the Class Members. Agreement at 18:21-18:24; *see also* Cal. Labor Code § 2699(i).

The calculation of the Distributable Amount is summarized below:

```
Gross Settlement Amount: $1,750,000.00
(minus) Class Counsel Fees: $525,000.00
(minus) Class Counsel Costs: $13,000.00
(minus) Estimated Settlement Administration Costs: $33,000.00
(minus) Enhancement Payment: $15,000.00
(minus) 75 % of LWDA Payment: $7,500.00
```

= **Estimated Amount Distributable to Class: $1,156,500.00**

Agreement at 19:1-19:7. Based on the class size of 3,097 individuals and assuming 100% participation, the gross recovery is approximately $373.43 per class member.

**B. Formula for Determining Individual Settlement Payments**

The formula for determining the Settlement Payment to each Authorized Claimant is as follows. The Settlement Payment will be based on each employee's amount of "Qualifying Gross Wages," which is adjusted based on whether the Class Member received lead pay or shift differential pay. The Qualifying Gross Wages is calculated differently depending on whether the Class Member received lead pay or shift differential pay.

For Class Members who received lead pay or shift differential pay, the Qualifying Gross Wages is the total gross W-2 wages earned by that Class Member for hourly, non-exempt work during the Class Period as reflected by Defendant's payroll records. Agreement at 7:3-8, 19:11-20:22.

However, to account for the more tenuous claim based on payment of lead or shift differential pay, any Class Member who did *not* receive lead pay or shift differential pay during the Class Period will have their total gross W-2 wages multiplied by two to get that individual's Qualifying Gross Wages. Agreement at 19:9-20:22.

The Settlement Administrator will then calculate the total Qualifying Gross Wages earned during the Class Period by all Authorized Claimants. Agreement at 19:23-28. Each Authorized Claimant's Settlement Payment will be based on their individual Qualifying Gross Wage amount divided by the total Qualifying Gross Wages for all Authorized Claimants multiplied by the Distributable Amount. Agreement at 19:23-28. Eighty percent will be designated as wages, to be reported on an IRS W-2 Form with legally required tax deductions, and twenty percent will be designated as interest reportable on IRS Form 1099. Lavi Supp. Decl. [Docket No. 79-1], Ex. 2 (Am. to Settlement Agreement) at 3:16-20.

Any and all employer and/or employee taxes arising from any payment to the Class shall be calculated and paid from the Distributable Amount by the Settlement Administrator. Agreement at 24:20-26, 21:9-14. Each Class Member shall be responsible for any tax consequences of the Settlement or payment of funds pursuant to this Agreement, including the payment of any applicable tax deductions or obligation as if paying through payroll. Agreement at 24:20-26, 21:9-14.

**C. Class Notice and Claims Procedure**

**1. Notice to Settlement Class Members**

Under the Agreement, no later than 75 days after the court grants preliminary approval, Defendant will provide the Settlement Administrator a list containing the Class Members' names, last known addresses, last known telephone number, total wages earned during the class period, whether the class member has received shift differential pay and/or lead pay during the Class Period, and social security number, which will be used to send a Notice of Settlement and Claim Form to Class Members. Agreement at 13:10-14:9; Lavi Decl. Ex. 2 (Claim Form) and Ex. 3 (Notice of Settlement).

Using this list, the Settlement Administrator shall, within thirty days of the information, mail the Notice of Settlement in English and Spanish via First-Class mail using the United States Postal Service to the most recent address known for each Class Member. Agreement at 13:10-14:9. Before mailing the Notice of Settlement, the Settlement Administrator shall review the national change of address registry and/or skip trace to determine the most up to-date addresses of Class Members. *Id.* If any Notices are returned with a forwarding address, the Settlement Administrator will re-mail the Notice of Settlement and Claim Form to the Class Member. *Id.* If, prior to the final date for any Class Member to opt-out, any Notice of Settlement is returned as having been undelivered by the U.S. Postal Service, the Settlement Administrator shall perform a skip-trace and send a Redirected Notice of Settlement to the new or different address within seven days. *Id.* A reminder postcard shall be sent twenty days before the claim form deadline. Agreement at 13:10-14:9.

**2. Claim Form**

The Settlement Administrator shall also mail the Claim Form with the Notice of Settlement. Agreement at 14:11-15:23. For the Claim Form to be valid, the Claim Form must be legible and include the following: first and last name, address, telephone number, and last four digits of his or her social security number. *Id.* To be timely, the signed Claim Form must be returned within 45 calendar days after the original date of mailing. *Id.* Claim Forms postmarked later than 45 calendar days after the original date of mailing will be accepted prior to final approval hearing only if, the Class Member can demonstrate that he or she is seriously ill or incapacitated, or that he or she failed to receive the Claim Form within 45 calendar days from the original date of mailing due to an incorrect address. *Id.* Any Class Member who demonstrates these circumstances may request, prior to the final approval hearing date, a Notice of Settlement and Claim Form and shall have up to 30 days from the mailing to reply. Agreement at 14:11-15:23.

Any Claim Form that contains insufficient information, is unsigned, or is illegible shall be returned to the Class Member to cure the deficiency as set forth above. *Id.* The Class Member shall have 15 days from the mailing date or until seven days before the final approval hearing date, whichever occurs first, to cure the deficiency. *Id.* If the deficiency is not timely cured, the Claim Form shall be deemed invalid and shall not be counted as a valid Claim Form. *Id.* Any person who fails to submit a

7

valid and timely Claim Form shall not receive an individualized Settlement Payment from this Settlement. Class Members who fail to submit valid and timely Claim Forms are still bound by this Agreement, unless they submit a timely request to be excluded from the Settlement. *Id.*

### 3. Request for Exclusion and Objections to the Settlement

Class Members will have the opportunity to request exclusion from the Settlement. *Id.* 15:24-16:15. For any Class Member to validly exclude himself or herself, he or she must submit a written request to the Settlement Administrator within 45 calendar days after the initial mailing which expresses his or her desire to be excluded and the name, current address, telephone number, and last four digits of his or her social security number to confirm identity. *Id.* Any Class Member who submits a valid and timely opt out notice shall no longer be a member of the Class, will not be bound by the release, shall be barred from participating in this Settlement, shall be barred from objecting to this Settlement, and shall receive no benefit from this Settlement. *Id.* If a Class Member submits to the Settlement Administrator a timely and valid Claim Form and a timely request to be excluded from the Settlement, the Settlement Administrator shall contact the Class Member to determine which option he or she prefers. If the Settlement Administrator cannot reach the Class Member, the Claim Form shall govern and the Request for Exclusion shall be deemed null and void. *Id.*

Any Class Member wishing to object to the approval of this Settlement shall inform the Court, Class Counsel, and Counsel for Defendant in writing of his or her intent to object by following the procedure set forth in the Notice of Settlement within 45 calendar days of mailing of the Notice of Settlement and Claim form. *Id.* at 17:4-16. Class Members are forever barred from objecting to the Settlement if they do not file and serve written objections within 45 calendar days of the filing of the Notice of Settlement and Claim Form. *Id.*

## III. DISCUSSION

### A. Conditional Class Certification

Plaintiff seeks conditional certification of a settlement class under Federal Rules of Civil Procedure 23(a) and 23(b)(3). A court may only certify a class action if it satisfies the four prerequisites identified in Rule 23(a) *and* fits within one of the three subdivisions of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Class certification requires the following: (1) the class must be

so numerous that joinder of all members individually is "impracticable;" (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the person representing the class must be able to fairly and adequately protect the interests of all class members. *See* Fed. R. Civ. P. 23(a); *Staton v. Boeing*, 327 F.3d 938, 953 (9th Cir. 2003). "The four requirements of Rule 23(a) are commonly referred to as 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' (or just 'adequacy'), respectively." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). Certification under Rule 23(b)(3) is appropriate where there are common questions of law or fact which predominate and class resolution is superior to other available methods. Fed. R. Civ. P. 23(b)(3). In the settlement context, the court must pay "undiluted, even heightened, attention" to class certification requirements because the court will not have the opportunity to adjust the class based on information revealed at trial. *See Staton,* 327 F.3d at 952-53 (quoting *Amchem*, 521 U.S. at 620); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998) (same).

**1. Rule 23(a)**

Here, the requirements under Rule 23(a) are satisfied. First, there are approximately 3,097 class members, all identifiable from Defendant's records. This is sufficient to satisfy Rule 23's numerosity and ascertainability requirements. *See Hanlon*, 150 F.3d at 1019 ("The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'") (quoting Rule 23(a)(1)); *see also O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) ("A class definition should be precise, objective, and presently ascertainable," though "the class need not be so ascertainable that every potential member can be identified at the commencement of the action.") (quotations omitted).

With respect to commonality, Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019; *see also Ellis v. Costco Wholesale Corp*., 285 F.R.D. 492, 506 (N.D. Cal. 2012). Here,

the issues facing the class arise from common questions involving Defendant's policies regarding the calculation and payment of wages, provision of wage statements, and provision of timely and compliant meal and rest periods to its workers. This is sufficient to satisfy the commonality requirement. *See Dilts v. Penske Logistics*, LLC, 267 F.R.D. 625, 633 (S.D. Cal. 2010) (finding commonality requirement satisfied where plaintiffs identified "common factual questions, such as whether defendants' policies deprived the putative class members of meal periods, rest periods, overtime pay, and reimbursement . . . , and common legal questions, such as Defendants' obligations under [sections of the] California Labor Code").

Plaintiff has also satisfied Rule 23(a)(3)'s typicality requirement. Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of the requirement "is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quotation marks omitted) (quoting *Marisol v. Giuliani,* 126 F.3d 372, 376 (2nd Cir. 1997), *abrogated on other grounds by Johnson v. Cal.*, 543 U.S. 499, 504-05 (2005)). Here, the named Plaintiff's personal claims are similar to those of the absent class members; namely, he was not properly paid all of his earned wages, was not paid the legal minimum wage, was paid overtime at a rate improperly calculated, was not furnished with accurate itemized wage statements, was not timely paid after his termination, and was not provided with all of his meal and rest periods.

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020. To determine whether the adequacy prong is satisfied, courts consider the following two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957 (citation omitted); *see*

*also Fendler v. Westgate-California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (noting that representative plaintiffs and counsel also must have sufficient "zeal and competence" to protect class interests). Here, there is no indication that there is any conflict between the class and Plaintiff and/or his counsel. In addition, the court is satisfied that Plaintiff and his counsel have and will continue to pursue this action vigorously on behalf of Plaintiff and the proposed class members.

### 2. Rule 23(b)

In addition to meeting the prerequisites of Rule 23(a), a proposed class must be appropriate for certification under one of the categories in Rule 23(b). *See* Fed. R. Civ. P. 23(b); *Hanlon,* 150 F.3d at 1022. The court finds that certification is appropriate under Rule 23(b)(3). Questions of law and fact common to class members predominate over any questions affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3). The case involves multiple claims for relatively small sums, and a class action is superior to an alternative method for fairly and efficiently adjudicating the claims. *See Amchem,* 521 U.S. at 625; *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1163 (9th Cir. 2001) (class action appropriate because "if plaintiffs cannot proceed as a class, some—perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover.").

In sum, the record would be sufficient to support conditional certification of the settlement class under Rules 23(a) and 23(b)(3). However, the parties proposed conditional certification in the context of a proposed class action settlement. Due to remaining questions regarding the fairness and adequacy of the proposed class settlement that result in a denial of preliminary approval, the class is not conditionally certified at this time.

### B.     Preliminary Fairness Determination

### 1. Legal Standard

Federal Rule of Civil Procedure 23(e) requires the court to determine whether a proposed settlement is "'fundamentally fair, adequate, and reasonable.'" *Staton*, 327 F.3d at 952 (quoting *Hanlon*, 150 F.3d at 1026); *see also* Fed. R. Civ. P. 23(e) (court may only approve class action settlement based on finding that settlement is "fair, reasonable, and adequate"). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted). "The initial decision to approve

or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

To make a fairness determination, the court must balance a number of factors, including the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; and the experience and views of counsel. *Staton*, 327 F.3d at 959. In making this evaluation, the court is not to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625. "The relative importance to be attached to any factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Id*. Further, as some of these factors cannot be fully assessed until the court conducts its final fairness hearing, "a full fairness analysis is unnecessary at this stage." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (quotation marks and citation omitted). Preliminary approval of a settlement and notice to the class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Manual for Complex Litigation, Second § 30.44 (2d ed. 1985)).

Here, the court conducted a preliminary approval hearing and requested supplemental briefing on significant unanswered questions bearing on the fairness of the class settlement. Rather than provide substantial responses, the parties chose to respond in large part by indicating that the court's concerns were misguided. The deficiencies described below weigh against preliminary approval of the settlement.

### 1. Range of Possible Approval

To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F.Supp.2d at 1080.

Here, counsel explains that it arrived at the estimated value of Plaintiff's claims through information gathered in formal and informal discovery. Defendant provided Plaintiff a sampling of about 11.88% of the class data. Using this sample, Plaintiff estimated Defendant's maximum potential to be about $20 million. Plaintiff then reduced Defendant's estimated maximum liability to about $10 million, because a contemporaneous case against Defendant before Judge Koh reached a settlement wherein the class members were required to release certain claims, reducing the amount potentially recoverable in this case. The Gross Settlement Amount is about 17.5% of the $10 million adjusted potential maximum recovery, which the parties believe is reasonable given the risk that the issues might be decided in Defendant's favor. *See* Motion at 21-23; Supp. Mot. at 26-27.

This estimation of the value of the claims is insufficient. *Compare Lounibos v. Keypoint Government Solutions Inc.*, No. 12-cv-636-JST, 2013 WL 3752965 (N.D. Cal. July 12, 2013) (denying preliminary approval of class settlement where partied had completed informal discovery, including sampling of data for 25% of putative class, but "state[d] conclusorily that the proposed settlement is reasonable") *and Martin v. FedEx Ground Package Sys., Inc.*, C 06-6883 VRW, 2008 WL 5478576 (N.D. Cal. Dec. 31, 2008) (preliminary approval of settlement agreement where valuation of claims was based on information acquired during discovery, including 10 sets of interrogatories and 46 depositions, and where settlement amount was 99% of total potential recovery). The court is especially concerned that Plaintiff spent only $2,450 for an expert to conduct claims analysis, which cast doubt on the rigor of Plaintiff's estimations of the potential maximum recovery. *See Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774 at *7 (N.D. Cal. June 19, 2007) (court asked for expert damages report to justify 87.7% discount in settlement versus predicted recovery, but "[w]hat was submitted was not a sworn expert report but unsworn spreadsheets prepared by counsel" and counsel's conclusory belief that settlement was "imminently reasonable"). In addition, the parties have not explained how the late addition of two claims and corresponding classes in the third amended complaint, filed after this motion, affects the range of possible approval. *See Walter v. Hughes Commc'ns, Inc.*, No. 09-2136 SC, 2011 WL 2650711 (N.D. Cal. July 6, 2011) (denying preliminary approval of a settlement agreement where agreement was unfair because, inter alia, it included an amended complaint that expanded the class definition).

The court is not finding that the proposed settlement is unfair. This class recovery may turn out to be fair in the end analysis. But, as the court admonished class counsel when it ordered supplemental briefing, class counsel must provide more information for the court to review in order to determine whether absent class members would be receiving a reasonable settlement in view of the risks and rewards of continuing litigation. The court cannot make that determination on the current sparse and largely conclusory record. This is especially true in light of what appears to be the last minute addition of two class claims during the settlement process that were not subject to vigorous discovery and analysis.

### 2. Allocation of Costs for Claims Administration

The Agreement allocates $33,000 for settlement administration costs. At the hearing, the court requested supplemental briefing on how the parties arrived at this estimate, and also on what would happen in the event that settlement administration costs surpassed the allocated amount. While Plaintiff has offered a satisfactory breakdown of the settlement administration costs, *see* Lavi Supp. Decl. Ex. 5B, that estimate is for $36,588.18, which *exceeds* what the Agreement allocates for it. The parties must agree upon and explain what will happen in the event that settlement administration costs exceed $33,000 before the court can grant preliminary approval.

### 3. Incentive Payment and Attorneys' Fees

The court has some concern regarding Plaintiff's anticipated request for incentive payment of up to $15,000, which exceeds the amount which is presumptively reasonable in this District. *See, e.g., Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, No. C 07-0362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (rejecting a request for a $25,000 incentive payment as "quite high for this district, in which a $5,000 payment is presumptively reasonable."). The Ninth Circuit has noted that plaintiffs who receive large incentive awards in addition to their share of the recovery "may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard," and become "more concerned with maximizing those incentives than with judging the adequacy of the settlement as it applies to class members at large." *Staton*, 327 F.3d at 975, 977 (quotation marks and citation omitted). The court also notes its concern regarding Plaintiff's anticipated request for attorneys' fees based on 30% of the Gross Settlement Amount in light of the fact that the benchmark for such an award is 25%. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir.

2011). Despite these concerns, the court need not resolve these matters at the preliminary approval stage, since both requests would be determined at a final fairness hearing.

**C.     Adequacy of Class Notice**

The court next considers the sufficiency of the parties' notice plan. Where a proposed settlement has been reached by the parties, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The court must ensure that the parties' notice plan provides for "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and that the notice itself explains in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and the binding nature of the class judgment. Fed. R. Civ. P. 23(c)(2)(B).

Here, Plaintiff appropriately proposes mailing the Notice of Settlement and Claim Form in English and Spanish to class members by first-class mail within thirty days of receiving class members' information from Defendant. The court finds that the Notice of Settlement adequately describes the nature of the action, summarizes the terms of the settlement, identifies the class and provides instruction on how to opt out and object, and sets forth the proposed fees and expenses to be paid to Plaintiff's counsel and the settlement administrator in clear, understandable language.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for preliminary approval of class action settlement is **denied** without prejudice. Plaintiff may, within 45 days of the date of this order, file a new motion for preliminary approval of the proposed settlement that cures each of the deficiencies identified in this order. The court notes that the parties initially proposed an inexplicably long timeline for claims submission following preliminary approval, which the court questioned. If the parties submit a subsequent request for preliminary approval, the court expects that the proposed timeline will be reasonable and consistent with the timeline used in similar cases.

A case management conference will be held on **July 30, 2014 at 1:30 p.m.**

IT IS SO ORDERED.

Dated: May 19, 2014

DONNA M. RYU
United States Magistrate Judge

15