Joseph Lavi, Esq. (State Bar No. 209776)
    jlavi@lelawfirm.com
Jordan D. Bello, Esq. (State Bar No. 243190)
    jbello@lelawfirm.com
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Blvd., Suite 200
Beverly Hills, California 90211
Telephone (310) 432-0000
Facsimile (310) 432-0001

Sahag Majarian, II, Esq. (State Bar No. 146621)
    sahagii@aol.com
**LAW OFFICE OF SAHAG MAJARIAN, II**
18250 Ventura Blvd.
Tarzana, California 91356
Telephone (818) 609-0807
Facsimile (818) 609-0892

Attorneys for PLAINTIFF CESAR CRUZ,
on behalf of himself and others similarly situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR CRUZ, on behalf of himself and others similarly situated<br><br>    PLAINTIFF,<br><br>vs.<br><br>SKY CHEFS, INC., a corporation; LSG LUFTHANSA SERVICE HOLDING AG, dba LSG SKY CHEFS, a corporation; and DOES 1 to 100, Inclusive.<br><br>    DEFENDANTS. | Case No.:  C-12-02705-DMR<br><br>**PLAINTIFF'S SECOND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:          August 12, 2014<br>Time:          11:00 a.m.<br>Courtroom:     4<br><br>Before Donna M. Ryu, United States Magistrate Judge |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ..................................................................................................4

        A.      Minimum Wage and Earned Rate Violations..................................................4

        B.      Meal Break Violations......................................................................................5

        C.      Rest Break Violations.......................................................................................5

        D.      Itemized Wage Statements ...............................................................................5

        E.      Failure to Provide Timely Wages ....................................................................6

III.    DISCOVERY AND MEDIATION .......................................................................6

IV.     SUMMARY OF SETTLEMENT TERMS ...........................................................8

        A.      Definition of Proposed Settlement Class .........................................................9

        B.      Settlement Terms...............................................................................................9

        C.      Notice to Settlement Class Members, Claim Forms, Objection and Opt-
                Out Rights ......................................................................................................15

                1.    Notice to Settlement Class Members .....................................................15

                2.    Claim Form ...........................................................................................16

                3.    Request for Exclusion and Objections to the Settlement ......................17

V.      THE SETTLEMENT MERITS PRELIMINARY APPROVAL............................18

        A.      Plaintiff's Claims Merit Class Action Treatment...........................................19

                1.    Numerosity .............................................................................................20

                2.    Commonality .........................................................................................20

                3.    Typicality...............................................................................................21

                4.    Adequate Representation........................................................................22

                5.    Predominance of Common Questions....................................................23

                6.    Superiority .............................................................................................24

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR**

i

B.      The Proposed Settlement is Fair, Reasonable, and Adequate ....................................25

C.      The Class Notice ...................................................................................................33

VI.   THE COURT SHOULD SCHEDULE A FAIRNESS HEARING ...........................................34

VII.  CONCLUSION .................................................................................................................34

# TABLE OF AUTHORITIES

Page

## United States Supreme Court Cases

*Amchem Products Inc. v. Woodward*,
   521 U.S. 591 (1997) ...................................................................................................25

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ............................................................................................. 19-20

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ..............................................................................................14, 34

## Federal Cases

*In re Activision Securities Litigation*,
   723 F. Supp. 1373 (N.D. Cal 1989)...........................................................................31

*Baldwin & Flynn v. Nat'l Safety Associates*,
   149 F.R.D. 598 (N.D. Cal. 1993) ..............................................................................20

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ........................................................................ 20-21, 24

*Busby v. JRHBW Realty, Inc.*,
   513 F.3d 1314, 1322 (11th Cir. 2008)........................................................................19

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
   917 F.2d 1171 (9th Cir. 1990)....................................................................................21

*In re Cendant Corp., Derivative Action Litigation*,
   232 F.Supp.2d 327 (D. N.J. 2002) ............................................................................30

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992)..............................................................................13, 19

*In re Compact Disc Minimum Advertised Price Antitrust Litigation*,
   216 F.R.D. 197 (D. Me. 2003) ...................................................................................30

*In re Computer Memories Sec. Litig.*,
   111 F.R.D. 675 (N.D. Cal. 1986) ..............................................................................20

*In re Corrugated  Container  Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981)................................................................................ 26-27

*Elkins v. Equitable Life Ins. of Iowa*,
  1998 U.S. Dist. LEXIS 1557, 1998 WL 133747 (M.D. Fla. 1998)..........................................25

*Gen. Tel. Co. of the Sw. v. Falcon*
  (1982) 457 U.S. 147 ..........................................................................................................21

*Glass v. UBS Financial Services, Inc.*,
  2007 U.S. Dist. LEXIS 8476, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ...........................32

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998)...................................................................12, 13, 14, 15, 16, 18

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ...........................................................................................21-22

*Ingram v. The Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) .......................................................................................33

*Lewis v. Gross*,
  663 F.Supp. 1164 (E.D. N.Y. 1986) .....................................................................................20

*Leyva v. Medline Indus.*,
  716 F.3d 510 (9th Cir. 2013) ............................................................................................24

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001)........................................................................................22, 24

*Mendoza v. United States*,
  623 F.2d 1338 (9th Cir. 1980) ............................................................................................34

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993).........................................................................................34

*In re Mfrs. Life Ins.*,
  1998 WL 1993385 (S.D. Cal. 1998) ...................................................................................32

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................................18

*Officers for Justice v. Civil Service Commission of City and County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982)...........................................................................................26

*Paul, Johnson, Alston & Hunt v. Graulty*
  886 F.2d 268 (9th Cir. 1989).............................................................................30-31, 32-33

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) .........................................................................................................24

*Riordan v. Smith Barney,*
    113 F.R.D. 60 (N.D. Ill. 1986) ........................................................................20

*Schwartz v. Dallas Cowboys Football Club, Ltd.,*
    157 F. Supp. 2d 561 (E.D. Pa. 2001)..............................................................18

*Silber v. Mabon,*
    18 F.3d 1449 (9th Cir. 1994)................................................................ 13, 33-34

*Six Mexican Workers v. Arizona Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990) ....................................................................30-31

*In re Southern Ohio Correctional Facility,*
    175 F.R.D. 270 (S.D. Ohio 1997) ....................................................................33

*Staton v. Boeing,*
    327 F.3d 938 (9th Cir. 2003)......................................................................26, 32

*Strube v. American Equity Inv. Life Ins. Co.,*
    226 F.R.D. 688 (M.D. Fla. 2005) ....................................................................25

*In re Syncor ERISA Litigation,*
    516 F.3d 1095 (9th Cir. 2008) .........................................................................32

*In re Tableware Antitrust Litig.,*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007).........................................................18

*Valentino v. Carter-Wallace,*
    97 F.3d 1227 (9th Cir. 1996).........................................................................24

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976).........................................................................19

*Van Vranken v. Atl. Richfield Co.,*
    901 F. Supp. 294 (N.D. Cal. 1995).................................................................33

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ...............................................................30-31, 32

*Wang v. Chinese Daily News,*
    231 F.R.D. 602 (C.D. Cal. 2005) ...................................................................20

*Zinser v. Accufix Research Institute, Inc.,*
    253 F.3d 1188 (9th Cir. 2001).......................................................................23

**California Cases**

*Brinker v. Superior Court,*
    53 Cal.4th 1004 (2012).....................................................................................5

**Federal Rules of Civil Procedure**

Rule 23(a)..........................................................................................................................20, 21
Rule 23(a)(1) ............................................................................................................................20
Rule 23(a)(2) ............................................................................................................................20
Rule 23(b)(3) ...........................................................................................20, 24-25, 33
Rule 23(a)(4) ............................................................................................................................22
Rule 23(c)(2)(B) .............................................................................................................33-34
Rule 23(e) ...........................................................................................................................18, 26

**California law**

Cal. Lab. Code
§ 201 ..........................................................................................................................6, 22
§ 202 ..............................................................................................................................6
§ 204 ..............................................................................................................................3
§ 218 .........................................................................................................................4, 21
§ 226, subd. (a) ............................................................................................................21
§ 226.7 .........................................................................................................................21
§ 512, subd. (a) .............................................................................................................5
§ 1194, subd. (a) ...........................................................................................................4
§ 1198 ............................................................................................................................4

IWC Wage Orders
9-2001, subd. 2(H).........................................................................................................4
9-2001, subd. 4(A).........................................................................................................4
9-2001, subd. 11(A).......................................................................................................5
9-2001, subd. 11(B).......................................................................................................5
9-2001, subd. 11(D).......................................................................................................5
9-2001, subd. 12(A).......................................................................................................5
9-2001, subd. 12(B).......................................................................................................5

**Other Authorities**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Action* (4th ed. 2002)
§ 11.22.................................................................................................................... 18-19
§ 11.41........................................................................................................................19

Manual for Complex Litigation (Third) (1995)
§ 30.41........................................................................................................................18

Manual for Complex Litigation (Fourth) (2004)
§§ 21.632-21.635........................................................................................................18

Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial (The
Rutter Group 2012)
§ 10:571.....................................................................................................................19

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On or about March 16, 2012, Plaintiff filed the original Complaint in the Superior Court of the State of California, County of Alameda, Case No. HG12621714, captioned *Cruz v. Sky Chefs, Inc., et al.* On May 24, 2012, Plaintiff filed a First Amended Complaint. On May 25, 2012, Defendant removed the action to the United States District Court for the Northern District of California. On January 16, 2013, Plaintiff filed a Second Amended Complaint in the United States District Court for the Northern District of California.

Prior to the mediation, Plaintiff propounded written discovery, Interrogatories and Request for Production of Documents, which required Defendant to spend substantial time and effort in gathering the requested information.  The parties also agreed to conduct informal discovery including a random sample.  In order to have a random sample of the class data, Class Counsel requested Defendant to provide the Plaintiff with class members' payroll and punch history (i.e. punch in at the beginning of the shift, punch out for 1st meal break, punch in for 1st meal break, punch out for 2nd meal breaks, punch in for 2nd meal breaks and punch out at the end of the shift) for class members with last names beginning with "G", "J", "M", "R", "S", "T", and "W" for the period of March 16, 2008, to March 15, 2013.  (Lavi Dec. ¶ 8).

Defendant produced thousands of pages of documents (in hardcopy and electronic form) and detailed information regarding class data including putative Class Members' payroll records, timesheets, and other payroll information. Defendant also disclosed policies and procedures related to meal and rest breaks, work time, recording time, and other workplace policies applicable to the Plaintiff's class claims. (Dec. Lavi, ¶7).  Defendant provided multiple Excel documents which contained the above identified employees' actual punch history and the employees' paid history. (Dec. Lavi, ¶8).

The random sample was analyzed by the Plaintiff's expert. (Declaration of Sean Berger (hereinafter "Berger Dec.") attached as Exhibit 9 to Lavi Dec.).  After Plaintiff's expert combined

the Excel files and formatted the provided timecards, the results were as follows: 1) There were 564 uniquely identified employees; 2) The total number of the hours analyzed was *1,948,057* hours; 3) The total number of days worked analyzed was *224,785* days; 4) The total amount of unpaid hours based on comparing the actual punches and paid amount was 9,856 hours; 5) The total number of times that the employees worked 10 or more hours was 32,683 times; 6) The total number of times that the employees worked 10 or more hours, without having a 2nd meal punch was punch 32,137 times; and 7) Total number of times that the employees' 1st meal break punches came after 6 hours of work was 28,274 times.  (Berger Dec., ¶7).

Defendant estimated the total number of the workweeks as of May 24, 2013 to be 271,000 *seven* day workweeks, which is equivalent to 379,400 *five* day.  (Beger Dec. ¶8).  The data analyzed was for 44,957 workweeks or 11.8% of the total workweeks.  (*Id*.).   Plaintiff's expert believed that the 11.8% random sample in this matter truly represented a random sample and was sufficiently large enough since the employees' were randomly selected by their last initials, it was for the years throughout the class period, represented more than 560 uniquely identified employees and included approximately 2,000,000 worked hours. (*Id*. ¶ 10).

Upon analyzing Defendant's policies, procedures and data as well as Plaintiff's expert analysis and *prior* to the mediation, Plaintiff's counsel informed Defendant that Plaintiff intended to Amend his Complaint to add meal and rest break causes of action.  (Dec. Lavi, ¶13).

Furthermore, once the parties had sufficient time to analyze the data and armed with sufficient information to assess their relative strengths and weaknesses, the parties thereafter participated in a day-long mediation on June 5, 2013, before Jeff Krivis, Esq. (*Id*. ¶ 6.)  While the mediation did not culminate in a settlement on that day, the parties continued to utilize the services of Mr. Krivis to continue the settlement discussions for an additional ten (10) weeks. The continued efforts of the parties and mediator culminated in the Stipulation and Settlement Agreement which the Parties are now asking the Court to preliminarily approve. (*Id*.)

As a result of the Settlement Agreement, Plaintiff will be filing a Third Amended Complaint, seeking damages, penalties, restitution, injunctive relief, costs, attorney fees, and any

further relief deemed appropriate by the Court on the basis that Defendant failed to pay wages due (at applicable legal rate) for all time worked, failed to pay overtime at the proper rate by including all forms of remuneration in calculating the regular rate of pay, failed to provide proper meal and rest periods, failed to provide accurate wage statements, failed to timely pay all final unpaid wages, and violated California Unfair Competition law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* A copy of the Third Amended Complaint is attached as Exhibit A to Exhibit 1 of the Declaration of Joseph Lavi filed concurrently with this motion. Defendant denies each allegation asserted in the operative Complaint and asserts that it has no liability for the claims of the Representative Plaintiff or the Class.

The mediation involved extensive, arms-length negotiations, wherein numerous offers and counter offers were exchanged without the parties agreeing to any of the offers. (*Id.* ¶¶ 6, 18-20). The parties were not able to reach a settlement at the mediation. (*Id.* ¶ 6.) However, the parties continued to negotiate with the assistance of Jeff Krivis and finally agreed to the terms of the settlement approximately ten weeks after the mediation. (Lavi Decl. ¶ 6.) The assistance and experience of Jeff Krivis was essential to the resolution of the matter due to the contentious negotiations.

Plaintiff considered the facts of the case, probability of prevailing on the claims, Defendant's defenses, class certification, recent case law developments, potential appeals, delays and the settlement reached in the matter of *Johnson v. Sky Chefs, Inc.,* United States District Court, Northern District, Case No. 5:11-CV-05619 LHK wherein the *Johnson* case covered the period of October 18, 2007, to approximately September 1, 2013, and released all of the potential class members' Labor Code Section 203 claims as well as Labor Code Section 226 claims. (*Id.* ¶ 14.)

The Settlement contemplates (i) entry of an Order preliminarily approving the Settlement and approving certification of a provisional settlement class, contingent upon final approval of the Settlement; (ii) the mailing of a Notice of Settlement to all Class Members; (iii) the processing of any claims, objections, and opt-outs by the Settlement Administrator, as well as payment of any valid claims after final approval of this Agreement by the Court; and (iv) entry of a Judgment and

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR**

**3**

Order granting final approval of the Settlement and dismissal of the Action with prejudice ("Judgment").

## II.   BACKGROUND

The applicable Statutes and/or Wage Orders applicable to the pending action are as follows:

### A.   Minimum Wage and Earned Rate Violations:

California Labor Code section 1194 states in pertinent part: "Notwithstanding any agreement to work for a lesser wages, any employee receiving less than the legal minimum wage or the legal overtime compensation . . . is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation." Cal. Lab. Code § 1194, subd. (a).

California Industrial Welfare Commission Wage Order 9-2001, Subdivision 4(A), states in pertinent part: "Every employer shall pay to each employee wages . . . not less than eight dollars per hour for all hours worked…" IWC Order No. 9-2001, subd. 4(A); *see* Cal. Lab. Code § 1198 (authorizing IWC to issue wage orders). California Wage Order 9-2001 defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." IWC Order No. 9-2001, subd. 2(H).

California Labor Code section 204 states in pertinent part: "All wages … earned by any person in any employment are due and payable twice during each calendar month…" Cal. Lab. Code § 204.

California Labor Code section 218 states in relevant part: "Nothing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due . . . ." Cal. Lab. Code § 218.

In his first two causes of action of the Third Amended Complaint, Plaintiff contends that Defendant failed to pay wages to its California non-exempt employees for all hours worked at a minimum wage rate or earned wage rate due to Defendant's practices which included automatically deducting time from employees' daily hours worked and rounding. (Lavi Decl. Ex. 1 Ex. A at 5:4-6:7.)

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR**

**4**

### B.     Meal Break Violations

Wage Order 9-2001, subdivision 11, provides that:

> No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. An employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived. … If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided.

IWC Order No. 9-2001, subd. 11(A), (B), (D); see also Cal. Lab. Code § 512, subd. (a).

California law requires an employer to provide an employee a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work. *Id.*; *Brinker v. Superior Court*, 53 Cal.4th 1004, 1041 (2012).

In his fourth and fifth causes of action, Plaintiff contends that Defendant failed to provide second meal periods or timely first meal periods to California hourly non-exempt employees. (Lavi Decl. Ex. 1 Ex. A at 7:3-8:9.)

### C.     Rest Break Violations

Under California law, "[e]mployees are entitled to 10 minutes' rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours, and so on." *Brinker v. Superior Court,* 53 Cal.4th at 1029; Cal. Lab. Code §226.7; Wage Order 9, subd. 12(A), (B).

In his sixth cause of action, Plaintiff contends that Defendant failed to provide rest periods in excess of two (2) per day despite employees working more than 10 and more than 14 hours in a workday.   (Lavi Decl. Ex. 1 Ex. A at 8:10-28.)

### D.     Itemized Wage Statements

California Labor Code Section 226, subdivision (a), requires California employers to provide

non-exempt employees with itemized wage statements accurately stating information including gross wages earned, net wages earned, total hours worked, all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate.

Plaintiff alleges that Defendant failed to provide accurate wage statements since it did not accurately reflect all unpaid minimum/earned wages and wages for improperly provided meal and rest periods. (Lavi Decl. Ex. 1 Ex. A at 9:11-15.)

**E.      Failure to Provide Timely Wages**

California Labor Code § 201 states in pertinent part: "(a) If an employer discharges an employee, the wages earned and unpaid at the time if discharge are due and payable immediately…."

California Labor Code § 202 requires an employer promptly pay all wages due to resigning employees within 72 hours of notice of the employee resigning.

Plaintiff alleges that Defendant's hourly non-exempt employees did not receive compensation for all of their wages within the statutory time period when they resigned and/or were terminated due to Defendant's failure to ever pay unpaid minimum/earned wages and wages for improperly provided meal and rest periods. (Lavi Decl. Ex. 1 Ex. A at 9:15-23.)

Defendant denies all of Plaintiffs' claims and, except for settlement purposes, the propriety of class certification. There are approximately 3,097 class members in the pending action.

**III.   DISCOVERY AND MEDIATION**

The Parties have conducted a significant amount of law and motion practice during the prosecution of this case, including the filing and litigation of two separate motions to dismiss.  (*Id.* ¶ 6.) After the parties exchanged substantial amounts of discovery and allowed for time to analyze the documents and data, the parties engaged in mediation. (*Id.*¶ 7)  Plaintiff and Defendant mediated for a full day and into the evening before an experienced and well-regarded mediator, Mr. Jeffrey Krivis of First Mediation, on June 5, 2013. (*Id.*) While the mediation did not culminate in a settlement on that same day, the parties continued to utilize the services of Mr. Krivis to continue the settlement discussions for an additional ten (10) weeks. (*Id.*) The continued efforts of the parties and mediator culminated in the Stipulation and Settlement Agreement which the Parties are now

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR

6

seeking preliminary approval, a copy of which is attached as Exhibit 1 to the Declaration of Joseph Lavi.

Through discovery and in the context of mediation, the Parties conducted an extensive investigation into the facts and law at issue. (*Id.* ¶ 7.) For example, Defendant produced thousands of pages of documents (in hardcopy and electronic form) and detailed information regarding class data including putative Class Members' payroll records, timesheets, and other payroll information. (Lavi Decl. ¶ 7.) Defendant also disclosed policies and procedures related to meal and rest breaks, work time, recording time, and other workplace policies applicable to the Plaintiff's class claims. (*Id.*) Plaintiff also retained an expert to assist in analysis of the class data. (*Id.* ¶10)

In addition, Defendant conducted an extensive investigation into the facts and law, including conducting extensive review of the policies, claims, applicable law and interviewing of numerous employees. (*Id.* ¶ 15.) The parties had an opportunity during and after the mediation to engage each other on the merits of the claims and defenses as well as potential exposure. (*Id.*) Considering all of these and other factors, Defendant concluded that the future costs and expenses involved in continuing litigation are substantial and chose to eliminate any further expenses, attorney fees, and risks associated with the continuation of the action via this Settlement. (See Lavi Decl. Ex. 1. at 10:25-28.)

Plaintiff considered the facts of the case, probability of prevailing on the claims, Defendant's defenses, class certification, recent case law developments, potential appeals, delays and the settlement reached in the matter of *Johnson vs. Sky Chefs, Inc.*, 11:CV-05619-LHK, wherein the Johnson case covered the period of October 18, 2007, to approximately September 1, 2013, and released all of the potential class members' Labor Code Section 203 claims as well as Labor Code Section 226 claims. (*Id.* ¶ 23.)   Furthermore, Defendant alleged it could strongly challenge any request for class certification by submitting testimony, declarations, and evidence that Plaintiff can point to no unlawful company-wide policy or practice or willful conduct by Defendant, among other evidence. (*Id.* ¶24.)  In connection with the time shaving/rounding wage claims, Defendant claimed that the amount of unpaid wages was relatively minimal for each Class member and *de minimus*.

Defendant also claimed that there was no evidence that the unpaid worked time was a result of Defendant's widespread policies affecting all class members. (*Id*.)  As to the regular rate claims, Defendant claimed that class members were exempt from entitlement to overtime under Wage Order 9 based on the existence of a CBA and payment of more than 30 percent than the state minimum wage. (*Id*.)  Defendant further argued that even if the employees were not exempt and Plaintiff succeeded on establishing validity of the regular rate argument on a class basis, Defendant would have a good faith defense argument, an argument that Defendant did not willfully fail to pay employees, i.e., Defendant did not intentionally withhold the wages or refuse to pay the wages. (*Id*.)

As to the meal and rest break Defendant claimed that the class member were preempted pursuant to ADA and/or FAAAA.  (*Id*. ¶24.)  Defendant also argued that the class members had waived their 2nd meal breaks since they were informed of their right to take a 2nd meal break as stated in the CBA agreement as well as the fact that some of the class members in fact took their 2nd meal breaks.  (*Id*.).  Defendant further argued that the 2nd meal break and 3rd rest break class would be limited in size, as records showed that most employees did not work shifts of ten (10) or more hours thus not being entitled to 2nd meal breaks or 3rd rest breaks.  (*Id*.).

Formal discovery, data, and ever-changing and unsettled legal authorities revealed weaknesses in Plaintiff's claims that could severely challenge Plaintiff's success at class certification. Our investigation established risks related to certification and liability on a number of claims. Those risks led to the Settlement and a compromise figure. Plaintiff and Class Counsel concluded, after taking into account the disputed factual and legal issues involved in this case, the risks attending further prosecution such as meal and rest breaks being preempted by FAAAA or the Court determining that the unpaid time was de minimus , including risks related to a contested motion for class certification, and the substantial benefits to be received pursuant to a compromise and settlement of the case as set forth in the Agreement, that settlement on the terms agreed to are in the best interest of Plaintiff and the settlement class. (*Id.* ¶ 19.)

## IV.   SUMMARY OF SETTLEMENT TERMS

The full terms of the Settlement are set forth in the "Stipulation and Settlement Agreement"

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR

8

(hereinafter, "Settlement Agreement ") filed concurrently herewith as Exhibit "1" to the Declaration of Joseph Lavi. The material terms are as follows:

### A.    Definition of Proposed Settlement Class

Under the terms of the proposed settlement, "Class Members" shall be defined as follows:

> "Class" or "Class Member" or "Class Members" means any current or former hourly, non-exempt employee of Sky Chefs who performed paid work for Sky Chefs in California from March 16, 2008 up to December 12, 2013, or if such person is incompetent or deceased, the person's guardian, executor, heir or successor in interest.

(Lavi Decl. Ex. 1 ¶ 5.)

### B.    Settlement Terms

In exchange for a release of claims against Defendant, as set forth more fully in the Settlement Agreement, the payment terms of the Settlement Agreement are as follows:

1.    *Gross Settlement Amount*: Defendant shall pay the maximum amount of Settlement compensation of One Million Seven Hundred Fifty Thousand Dollars and No Cents ($1,750,000.00) (the "Gross Settlement Amount") which is non-reversionary and shall include participating class members' claims and payroll taxes, Class Counsel Fees and Costs, Enhancement Payment to Class Representative Plaintiff, payment to the LWDA for PAGA penalties, and Settlement Administration Costs. (Lavi Decl. Ex. 1 at 18:4-21:16.)

a.    *Distributable Amount*: The total portion of the Gross Settlement Amount to be paid to "Authorized Claimants," those Class Members who file a valid and timely Claim Form with the Settlement Administrator to register their claim for a Settlement Payment, (Lavi Decl. Ex. 1 at 2:17-19) is equal to the Gross Settlement Amount less Class Counsel Fees, Class Counsel Costs, Enhancement Payment, LWDA Payment, and Settlement Administration Costs. If the requested amounts are approved, this would result in a total class payout of approximately One Million One Hundred Fifty-Six Five Hundred Dollars and No Cents ($1,156,500.00).

| | |
|---|---|
| **Gross Settlement Amount:** | **$1,750,000.00** |
| Class Counsel Fees (minus): | $525,000.00 |
| Class Counsel Costs (minus): | $13,000.00 |
| Enhancement Payment (minus): | $15,000.00 |
| 75 % of LWDA Payment (minus): | $7,500.00 |

---

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR**

**9**

|  | Estimated Settlement Administration Costs (minus) | $33,000.00 |
|---|---|---|
|  | **Estimated Amount Distributable to Class:** | **$1,156,500.00** |

(Lavi Decl. Ex. 1 at 19:1-8.) Presuming 100% participation, this equates to an average individual settlement amount of $373.43 per class member and each individual settlement payment would increase as the participation rate decreases ($1,156,500.00 ÷ 3,097 class members = $373.43). In the event the Court awards an amount less than any of the amounts sought above, the difference will become part of the Distributable Amount. (Lavi Decl. Ex. 1 at 18:9-19:8.)

        b.    *Class Counsel Fees and Costs*: Class Counsel will request payment of Five Hundred Twenty-Five Thousand Dollars and No Cents ($525,000.00) for Class Counsel Fees and an amount not to exceed Thirteen Thousand Dollars and No Cents ($13,000.00) for Class Counsel Costs. (Lavi Decl. Ex. 1 at 21:25-22:5.)

        c.    *Settlement Administration Costs*: The parties have selected CPT Group, Inc., to act as Settlement Administrator in this action. (Lavi Decl. Ex. 1 at 22:20-21.) An amount not to exceed Thirty-Three Thousand Dollars and No Cents ($33,000.00) is allocated to compensate all reasonable costs incurred by the Settlement Administrator in administration of the Settlement. (Lavi Decl. Ex. 1 at 18:25-27.)  It should be noted that although the grant total of the claim administrative charges are $36,588.18, CPT, Inc. has provided the class members with a discount and capped its fees at $30,000.00.  (See Exhibit 4, attached to Declaration of Julie Green from CPT, Inc.). Furthermore, the parties have placed a $3,000 cushion for the administrative costs in the event that there are unexpected changes or charges. In addition, in the event that the Claims administrative charges exceed, $33,000, those charges will be part of Plaintiff's counsel's costs.

        d.    *Representative Plaintiff Enhancement*: Subject to Court approval, the Representative Plaintiff will make an application for Fifteen Thousand Dollars and No Cents ($15,000.00) as an enhancement and compensation for his general release pursuant to California Civil Code Section 1542 and for his time and effort in prosecuting the matter.

        e.    *LWDA Payment*: Ten Thousand Dollars and No Cents ($10,000.00) shall be allocated to penalties paid to the Labor & Workforce Development Agency (LWDA) in satisfaction of claims for penalties owed to the agency under the Private Attorneys General Act ("PAGA"), Cal.

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR**

**10**

1    Lab. Code §§ 2698, *et seq.,* with 25% of the amount to be distributed to the Class Members. Cal.

2    Lab. Code § 2699, subd. (i).

3          2.      *Formula for Determining Value of Individual Settlement Payments*: Individual

4    "Settlement Payment" means the amount from the Distributable Amount that shall be paid to the

5    Authorized Claimants less any payroll taxes owed. The Settlement Payment to each Authorized

6    Claimant, Class Members who do not opt out and who timely submit a valid Claim Form, will be

7    based on each employee's amount of "Qualifying Gross Wages" which is also adjusted based on

8    whether the Class Member's received lead pay or shift differential pay. The Qualifying Gross

9    Wages is calculated differently depending on whether the Class Member received lead pay or shift

10   differential pay. For Class Members who received lead pay or shift differential pay, the Qualifying

11   Gross Wages is simply the total gross W-2 wages earned by that Class Member for hourly, non-

12   exempt work during the Class Period as reflected by Defendant's payroll records. (Lavi Decl. Ex. 1

13   at 7:3-8, 19:18-20:22.) However, to account for the more tenuous claim based on payment of lead or

14   shift differential pay, any Class Member who did *not* receive lead pay or shift differential pay during

15   the Class Period will have their total gross W-2 wages multiplied by two to get that Class Member's

16   Qualifying Gross Wages. (Lavi Decl. Ex. 1 at 19:9-20:22.) The Settlement Administrator will then

17   calculate the total Qualifying Gross Wages earned during the Class Period by all Authorized

18   Claimants which includes the adjusted wages for the Authorized Claimants who did not receive lead

19   pay or shift differential pay. (Lavi Decl. Ex. 1 at 19:23-28.) Each Authorized Claimant's Settlement

20   Payment will be based on their individual Qualifying Gross Wage amount divided by the total

21   Qualifying Gross Wages for all Authorized Claimants multiplied by the Distributable Amount.

22   (Lavi Decl. Ex. 1 at 19:23-28.) One hundred percent of the settlement will be deemed wages since

23   *Johnson v. Sky Chefs, Inc.,* had released all of the class members' potential Labor Code Sections

24   226 and 203 violations.  (See Amendment to the Stipulation and Settlement Agreement, attached as

25   Exhibit 2, to Dec. Lavi).

26          Any and all employer and/or employee taxes arising from any payment to the Class shall be

27   calculated and paid from the Distributable Amount by the Settlement Administrator. (Lavi Decl. Ex.

28

---

1 at 24:20-26, 21:9-14.) Each Class Member shall be responsible for any tax consequences of the Settlement or payment of funds pursuant to this Agreement, including the payment of any applicable tax deductions or obligation as if paying through payroll. (Lavi Decl. Ex. 1 at 24:20-26, 21:9-14.)

       3.   *No reversion*: The Joint Stipulation provides for a non-reversionary, claims-made process. The settlement is a claim made settlement since some of the former employees will not be located for various reasons such as having moved out of the country or not having an updated address with post office.  Therefore, in order to ensure that the money will be distributed amongst the class members that the Claims Administrator is able to reach rather than the money going to a cy pre or an organization that did not suffer the class members' harm, a claims made process will be utilized.  If all employees were automatically mailed checks (some to outdated addresses) rather than submission of a Claim Form, many of the checks might go uncashed and the Authorized Claimants would lose the opportunity to gain proportionate increases to their individual settlement payments. A non-reversionary, claims made procedure ensures that participating class members receive the settlement funds. In addition, the settlement is non-reversionary because the entire Distributable Amount will be distributed to only Authorized Claimants and any settlement checks remaining un-cashed one hundred eighty (180) calendar days after issuance will be void and escheated to the State of California pursuant to the California Code of Civil Procedure Section 1513. (Lavi Decl. Ex. 1 at 23:23-26.)

      After deducting Class Counsel Fees and Costs, Enhancement Payment to Class Representative Plaintiff, payment to the LWDA for PAGA penalties, and Settlement Administration Costs from the Gross Settlement Amount; the Distributable Amount will distributed to Authorized Claimants. (Lavi Decl. Ex. 1 at 19:1-20:28, 4:21-24.)

       4.   *Release by Class Members*:

      Under the terms of the Joint Stipulation, Class Members who join in the settlement, or who fail to submit valid and timely Requests for Exclusion (Opt-Outs)  release all claims that were alleged in the Operative Complaint or could have been alleged "based on the facts" in the Operative Complaint.  (*See* Stipulation and Settlement Agreement, §II, ¶27, at page 7, line 23.)  Class

1  Members will also be releasing all claims which they do not know or suspect to exist in their favor

2  under California Civil Code section 1542, except that this release is explicitly limited in time to the

3  Class Period and is limited to only those causes of action that were alleged in the Operative

4  Complaint.  (*See* Stipulation and Settlement Agreement, §II, ¶27, at page 8, lines 1-9.)

5        As provided in the Stipulation and Settlement Agreement, this is a compromised settlement

6  and the release is sufficiently tailored to the Class Members and the claims of the Complaint and

7  further ensures Defendant's entitlement to peace in exchange for the consideration it will be

8  providing under the Agreement.  Defendant argues that it is well-established that a class action

9  settlement can include an agreement to release defendants from any related claim, including claims

10  that could have been (but were not) asserted in the settled action.  (*See, e.g., Howard v. Am. Online*

11  *Inc*., 208 F.3d 741,747 (9th Cir. 2000) [approving a settlement agreement that barred all claims that

12  "arise out of or are related to the matters referred to" in the complaint]; *Class Plaintiffs v. City of*

13  *Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) [noting that a court may release "a claim based on the

14  identical factual predicate as that underlying the claims in the settled class action even though the

15  claim was not presented and might not have been presentable in the class action"] [citation

16  omitted].)

17        In this case, the Release bars only those claims arising from facts alleged in the complaint

18  and ensures that Defendant will not be forced to re-litigate the core questions which are addressed

19  by the action being settled.  Furthermore, the Civil Code section 1542 release language is explicitly

20  limited even further to only those causes of action alleged in the Operative Complaint (the TAC).

21  Accordingly, the Release is clearly supported by the case law. Furthermore, the Release in this case

22  does not violate due process since class members are adequately represented and will receive the

23  best practicable notice of the claims and adequate compensation for those claims. (*See, e.g.*

24  *Crawford v. Honig*, 37 F.3d 485, 487 (9th Cir. 1994) [noting that "[c]lass members who are not

25  parties to a class action suit nevertheless are bound by the judgment in the suit, and due process is

26  satisfied, if the members' interests are adequately represented by the class members who are

27  present"].)  Federal Rules of Civil Procedure, Rule 23(c)(2) provides:

28

> In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

It is well settled law that distribution of class notice by U.S. mail satisfies the requirements of Rule 23 and due process rights are not violated if a Class Member does not receive actual notice of settlement in time to opt out before a deadline. (*See Silber v. Mahon*, 18 F. 3d 1449, 1452-54 (9th Cir. 1994) [approving notice sent by first class mail as the "best notice practicable"]; *Hunt v. Check Recovery Sys., Inc.*, No. 05-4993, 2007 WL 2220972, at *3 (N.D. Cal. Aug. 1, 2007) [notice by first-class mail satisfies the best notice practicable requirement when class members can be identified through reasonable efforts].) Furthermore, "best efforts" and not actual success of personal service of the notice of settlement, is all that is required to satisfy due process. (*McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 73-74 (N.D. Cal. 1976); *Mullane v, Central Hanover Bank & Trust Co.*, 339 U.S. 306, 319 (1950) ["Therefore, notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all, since the objection sustained would inure to the benefit of all. We think that under such circumstances reasonable risks that notice might not actually reach every beneficiary are justifiable."].)

In this case, the manner of notice provide to Class Members exceeds due process requirements. Defendant shall provide to the Settlement Administrator the names, last known mailing addresses, and social security numbers of all Class Members. Prior to mailing out notice to Class Members, the Settlement Administrator shall CPT will perform a National Change of Address (NCOA) search in attempt to update the class list of addresses as accurately as possible prior to mailing. (*See* Declaration of Julie Green ["Green Decl."], ¶6, attached as Exhibit 5, to Lavi Dec.) A search of this database provides updated addresses for any individual who has moved in the previous four years and notified the U.S. Postal Service of a forwarding address. (*Id.*) Notice of the Settlement will then be forwarded via first-class U.S. Postal Mail to the most recent addresses located for each

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR**

**14**

Class Member.  (*See* Green Decl., ¶7.)  Furthermore, should any Notice packets be returned as undeliverable from the post office without a forwarding address, CPT Group will use the social security number provided by Defendant, to run a skip trace using the services of Accurint, one of the most comprehensive address databases available.  (*Id.*)  Accurint utilizes hundreds of different databases supplied by credit reporting agencies, public records and a variety of other national databases.  (*Id.*)  If a better address is obtained from the trace search CPT will promptly remail to the new address.  (*Id.*)  These additional steps ensure that all Class Members receive adequate notice of the Settlement.

Defendant argues that requiring actual notice to all Class Members for purposes of binding them to the Release would take away the benefit of Defendant's bargain in choosing to enter into the instant Settlement.  Class Members who do not receive actual notice, or simply claim they did not receive actual notice, could request exclusion from the class "months –perhaps years- after termination of the litigation," which would mean that "while  the plaintiff bore the cost of notice, the defendant bore the risk of the plaintiff's (or Post Office's) mistakes."  (*McCubbrey, supra*, at 74.)  Defendant argues that this is fundamentally unfair and takes away Defendant's incentive to settle costly and time consuming litigation.

Accordingly, the method and manner of notice provided for under the Stipulation and Settlement Agreement are the best practicable notice under the circumstances and satisfy the requirements of due process, such that all Class Members who do not opt-out or submit Requests for Exclusion from the Class are bound by the Release.

**C.      Notice to Settlement Class Members, Claim Forms, Objection and Opt-Out Rights**

**1.  Notice to Settlement Class Members**

The Parties have agreed to the form of the Class Notice that will be provided to the Class Members in English and Spanish. A true and correct copy of the Class Notice is attached as Exhibit 3 to the Declaration of Joseph Lavi.

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR**

**15**

No later than thirty (30) days after the Court grants preliminary approval, Defendant will provide the Settlement Administrator a list containing the Class Members' names, last known addresses, last known telephone number, total wages earned during the class period, whether the class member has received shift differential pay and/or lead pay during the Class Period, and social security number, which will be used to send the Notice of Settlement and Claim Form to Class Members. (*Id.* Ex. 1 at 13:10-14:9.) Using this list, the Settlement Administrator shall, within thirty (30) days of receipt of the information, mail the Notice of Settlement in English and Spanish via First-Class mail using the United States Postal Service to the most recent address known for each Class Member. (*Id.*) Before mailing the Notice, the Settlement Administrator shall review the national change of address registry and/or skip trace to determine the most up to-date addresses of Class Members. (*Id.*) If any Notices are returned with a forwarding address, the Settlement Administrator will re-mail the Notice and Claim Form to the Class Member. (*Id.*) If, prior to the final date for any Class Member to Opt-Out, any Notice is returned as having been undelivered by the U.S. Postal Service, the Settlement Administrator shall perform a skip-trace and send a Redirected Notice to the new or different address within seven days. (*Id.*) A reminder postcard shall be sent twenty (20) days before the claim form deadline. (Lavi Decl. Ex. 1 at 13:10-14:9.)

### 2. Claim Form

The Settlement Administrator shall also mail the Claim Form with the Notice of Settlement. (*Id.* at 14:11-15:23.) A true and correct copy of the agreed upon claim form is attached as Exhibit 2 to the Declaration of Joseph Lavi. For the Claim Form to be valid, the Claim Form must be legible and include the following: first and last name, address, telephone number, and last four digits of his or her social security number. (*Id.*) To be timely, the signed Claim Form must be returned within forty-five (45) calendar days after the original date of mailing. (*Id.*) Claim Forms postmarked later than forty-five (45) calendar days after the original date of mailing will be accepted prior to final approval hearing only if, the Class Member can demonstrate he or she is seriously ill or incapacitated, or failed to receive the Claim Form within forty-five (45) calendar days from the

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR**

**16**

1   original date of mailing due to an incorrect address. (*Id.*) Any Class Member who demonstrates

2   these circumstances may request, prior to the final approval hearing date, a Notice and Claim Form

3   and shall have up to thirty (30) days from the mailing to reply. (Lavi Decl. Ex. 1 at 14:11-15:23.)

4          Any Claim Form that contains insufficient information, is unsigned, or is illegible shall be

5   returned to the Class Member to cure the deficiency as set forth above. (*Id.*) The Class Member shall

6   have fifteen (15) days from the mailing date or until seven (7) days before the final approval hearing

7   date, whichever occurs first to cure the deficiency. (*Id.*) If the deficiency is not timely cured, the

8   Claim Form shall be deemed invalid and shall not be counted as a valid Claim Form. (*Id.*) Any

9   person who fails to submit a valid and timely Claim Form shall not receive an individualized

10  Settlement Payment from this Settlement. Class Members who fail to submit valid and timely Claim

11  Forms are still bound by this Agreement, unless they submit a timely request to be excluded (Opt

12  Out) from the Settlement.

### 3. Request for Exclusion and Objections to the Settlement

14         Class Members will have the opportunity to request exclusion from the Settlement. (*Id.*

15  15:24-16:15.) For any Class Member to validly exclude himself or herself, he or she must submit a

16  written request to the Settlement Administrator within forty-five (45) calendar days after the initial

17  mailing which expresses his or her desire to be excluded and the name, current address, telephone

18  number, and last four digits of his or her social security number to confirm identity. (*Id.*) Any Class

19  Member who submits a valid and timely opt out notice shall no longer be a member of the Class,

20  will not be bound by the release, shall be barred from participating in this Settlement, shall be

21  barred from objecting to this Settlement, and shall receive no benefit from this Settlement. (*Id.*) If a

22  Class Member submits to the Settlement Administrator a timely and valid Claim Form and a timely

23  request to be excluded from the Settlement, the Settlement Administrator shall contact the Class

24  Member to determine which option he or she prefers. If the Settlement Administrator cannot reach

25  the Class Member, the Claim Form shall govern and the Request for Exclusion shall be deemed null

26  and void.

27

28

Any Class Member wishing to object to the approval of this Settlement shall inform the Court, Class Counsel, and Counsel for Defendant in writing of his or her intent to object by following the procedure set forth in the Notice of Settlement within forty-five (45) calendar days of mailing of the Notice of Settlement and Claim form. (*Id.* at 17:4-16.) Class Members are forever barred from objecting to the Settlement if they do not file and serve written objections within forty-five (45) calendar days of the ailing of the Notice of Settlement and Claim Form.

## V.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

A class action may not be dismissed, compromised or settled without the approval of the Court. Fed. R. Civ. P. 23(e). Federal Rules of Civil Procedure, Rule 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing Manual for Complex Litigation (Third) § 30.41 (1995). The settlement approval procedure includes the following steps: (1) preliminary fairness review of the proposed Settlement; (2) dissemination of mailed and/or published notice of the Settlement and formal fairness review to all affected class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard and evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. Manual for Complex Litigation (Fourth) §§ 21.632-21.635 (2004).

The primary concern of judicial supervision at this stage of the settlement process is to ensure that "(1) the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls with the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n 12 (E.D. Pa. 2001)); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (the court's task is to "balance a number of factors," including "the risk, expense, complexity, and likely

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR

18

1  duration of further litigation," the extent of discovery completed and the stage of the proceeding,"

2  and "the amount offered in settlement"); *see* 4 Alba Conte & Herbert B. Newberg, *Newberg on*

3  *Class Action* § 11.22 (4th ed. 2002) *("Newberg").*

4        The law favors settlement, particularly in class actions and other complex cases where

5  substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See*

6  4 *Newberg* § 11.41, at pp. 87-88 (and cases cited therein); *Class Plaintiffs v. City of Seattle,* 955

7  F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir.

8  1976).  These concerns apply in this action where the alleged practice affected thousands of

9  employees. To make this fairness determination, courts must give "proper deference to the private

10  consensual decision of the parties" since "the court's intrusion upon what is otherwise a private

11  consensual agreement negotiated between the parties to a lawsuit must be limited to the extent

12  necessary to reach a reasoned judgment that the agreement is not the product of fraud or

13  overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

14  whole, is fair, reasonable and adequate to all concerned." *See Hanlon,* 150 F.3d at 1027. Indeed,

15  because "a settlement is the offspring of compromise," the question upon preliminary approval "is

16  not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate

17  and free from collusion." *Id.*  When examining settlements, a presumption of fairness exists where:

18  (1) settlement is reached through arm's-length bargaining; (2) investigation and discovery are

19  sufficient to allow counsel and court to act intelligently and (3) counsel is experienced in similar

20  litigation. 4 Newberg § 11.41.

21       **A.**    **Plaintiff's Claims Merit Class Action Treatment**

22        Plaintiff need only make a "prima facie showing" of the requirements under Rule 23. *Busby*

23  *v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008); *see* Schwarzer, Tashima &

24  Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial § 10:571 (The Rutter Group 2012). In

25  determining the propriety of class certification, a court may not delve into the underlying merits of

26  the claims. The fundamental question "is not whether . . . plaintiffs have stated a cause of action or

27  will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle*

28

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR**

19

*& Jacquelin,* 417 U.S. 156, 178 (1974). Accordingly, the Ninth Circuit has established that, when ruling on the propriety of class certification, a district court "is bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack,* 524 F.2d 891, 901 n.17 (9th Cir. 1975). A court "may not require plaintiffs to make a preliminary proof of their claim; it requires only sufficient information to form a reasonable judgment." *Baldwin & Flynn v. Nat'l Safety Associates,* 149 F.R.D. 598, 600 (N.D. Cal. 1993).

Under these governing standards, this action meets the requirements for certification under Rule 23(a) and Rule 23(b)(3).

### 1.  Numerosity

Under Rule 23(a)(1), a class action may be maintained where "the class is so numerous that joinder of all members is impracticable." In determining whether joinder would be impracticable, a court may consider not only the sheer number of class members, but also "the nature of the action, the size of the individual claims, [and] the inconvenience of trying individual suits." *Wang v. Chinese Daily News,* 231 F.R.D. 602, 606 (C.D. Cal. 2005).

Here, the class is composed of approximately 3,097 employees. When a class is as large as this one, "numbers alone are dispositive." *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D. Ill. 1986). Plaintiff need not provide the precise number of class numbers. "A class action may proceed upon estimates as to the size of the proposed class." *Lewis v. Gross,* 663 F.Supp. 1164, 1169 (E.D. N.Y. 1986); *In re Computer Memories Sec. Litig*., 111 F.R.D. 675, 679 (N.D. Cal. 1986) (class certified where plaintiffs did not establish exact number of class members, but demonstrated that class would "obviously be sufficiently numerous").

### 2.  Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." This commonality requirement must be "construed permissively." *Hanlon v. Chrysler Corp.,* 150 F.3d at 1019. Plaintiff need not demonstrate that all questions of fact and law are common. "The existence of shared legal issues with divergent factual predicates is sufficient." *Id.* Where a class is united by a common interest in determining whether a defendant's broad course of conduct is actionable,

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR

20

commonality is not defeated "by slight differences in class members' positions." *Blackie*, 524 F.2d at 902.

Here, all class members share several common legal questions:

1. Whether Defendants violated California Labor Code §§ 226.7 and 512, as well as California Wage Order 9-2001, by failing to provide their employees with all requisite meal breaks in a timely fashion;

2. Whether Defendants violated California Labor Code § 226.7, as well as California Wage Order 9-2001, by failing to provide their employees with all requisite rest breaks in a timely fashion;

3. Whether Defendants violated Labor Code §§ 204, 1194, and 1197, as well as Wage Order 9-2001, by failing to provide their employees with minimum wages or earned wages for all hours worked;

4. Whether Defendants violated Labor Code § 510, and Wage Order 9-2001, by failing to provide their employees with properly calculated overtime wages;

5. Whether Defendants violated Labor Code § 226(a) by failing to provide their employees with accurate wage statements; and

6. Whether Defendants violated Labor Code Sections 201, 202 and 203 by failing to provide the class members with all unpaid final wages on timely basis.

Any factual variations among class members, as to whether they missed their meal breaks, have no bearing on this common legal question. All class members share the common interest of determining whether they were entitled to meal breaks, minimum and earned wages, overtime wages, accurate wage statements, and their final unpaid wages on timely basis.

### 3. Typicality

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims . . . of the class." Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be identical." *Hanlon*, 150 F.3d at 120. In other words, named plaintiff need not be "identically situated" with all other class members. "It is enough if their situations share a common issue of law or fact and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief." *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.,* 917 F.2d 1171, 1175 (9th Cir. 1990). The Supreme Court has observed that, in practice, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Sw. v. Falcon* (1982) 457 U.S. 147, 157, n.13.

Typicality refers to the "nature of the claim . . . of the class representative, and not to the

specific facts from which it arose." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). The test of typicality is thus "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.*

Here, Plaintiff, like all other class members, was a non-exempt hourly employee, employed in California during the Class Period who was subject to the same policies and procedures in question in the pending action. All class members and Plaintiff seek the same relief. Class members seek relief under Labor Code §§ 201, 202, 203, 204, 226(a), 226.7, 510, 512, 1194 and 1197. This lawsuit is based on conduct which is not unique to Plaintiff, but on a course of conduct that is common to all class members.

### 4.  Adequate Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation turns on whether the named plaintiff and his counsel "have any conflicts of interest with other class members," and whether the named plaintiff and his counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

Here, there are no conflicts of interest between Plaintiff and class members. Given the similarity of the claims asserted and remedies sought by class members in this case, it is hard to imagine how there could be any conflicts.

Nor are there any conflicts with Plaintiff's counsel. Plaintiff's counsel, who has substantial class action experience, can adequately represent the class. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

Both Plaintiff's Class counsel are experienced in employment, wage and hour and class action matters. Lavi & Ebrahimian LLP is a well-regarded as a firm that handles exclusively employment matters (both individual and class). (Lavi Decl. ¶ 3.) Joseph Lavi, of Lavi & Ebrahimian, LLP, has been approved in class counsel in numerous actions and has been named a Southern California Super Lawyer the area of Plaintiff's employment litigation- class action from

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR**

**22**

2011-2013. (*Id.*) Mr. Lavi has handled numerous cases in all aspects of employment and labor law, including State and Federal class actions, wrongful termination, discrimination, harassment and retaliation cases. (*Id.*) Mr. Lavi counsel has been designated as class counsel by both State and Federal Courts, has tried employment cases, and has argued cases in various Courts of Appeal. (*Id.*) Mr. Lavi has also been a panelist/speaker for various Employment Law Continuing Legal Education Panels on issues of employment law trials, how to proceed and conduct trials as well as proving and winning punitive damages. (*Id.*) Mr. Lavi has settled dozens of wage and hour class actions and is currently Plaintiff's counsel in numerous others. (*Id.*) Some of the class actions that Mr. Lavi has handled against employers on wage and hour issues consisted of Kaiser Permanente which settled for $6,510,000.00; Hustler Casino which settled for $980,000.00; Chevron Stations Inc., which settled for $4,500,000.00; Commerce Casino which settled for $1,575,000.00; BP West Cost Products, which settled for $4,000,000.00; Kaiser Permanente which settled for $3,600,000.00, Fuddruckers (lead counsel) which settled for $900,000.00, Chuck-e-Cheeses' (lead counsel) which settled for $1,900,000.00 Clougherty (lead counsel) which settled for $4,250,000.00 and Gruma (lead counsel) which settled for $2,300,000.00. (*Id.*) Sahag Majarian II of The Law Offices of Sahag Magarian is a well-respected and experienced employment attorney who dedicates a significant portion of his practice to employment law and class actions. (Lavi Decl. ¶ 4.) Mr. Majarian has been appointed class counsel for plaintiffs in more than 30 wage and hour actions and has developed a thorough knowledge of the legal issues related to certification and liability in the employment wage and hour class action litigation context. (*Id.*) In short, Class Counsel are experienced and qualified to evaluate the class claims and to evaluate settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses.

### 5.  Predominance of Common Questions

The predominance inquiry focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation." *Culinary/Bartender Trust Fund*, 244 F.3d at 1162. Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1188, 1189 (9th Cir. 2001).

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR

23

Here, whether Defendant had a policy or practice of failing to provide their non-exempt employees with all required meal breaks, meal breaks in a timely fashion, all required rest breaks, adequate minimum and earned wages for all hours worked, accurate wage statements, and timely payment of their final, unpaid wages is the central issue that predominates over any individual issues. Considerations of judicial economy obviously favor litigating this common issue once in a class action instead of hundreds of times in separate lawsuits. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. It is well settled that the need for determining differing amounts of damages suffered by different class members does not preclude class certification. *Leyva v. Medline Indus.*, 716 F.3d 510, 513-514 (9th Cir. 2013); *Blackie,* 524 F.2d at 905.

### 6.   Superiority

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims. Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement. "[I]f a comparable evaluation of other procedures reveals no other realistic possibilities, [the] superiority portion of Rule 23(b)(3) has been satisfied." *Culinary/Bartenders Trust Fund,* 244 F.3d at 1163; s*ee also Valentino v. Carter-Wallace,* 97 F.3d 1227, 1235-36 (9th Cir. 1996) ("a class action is a superior method for managing litigation if no realistic alternative exists").

In *Culinary/Bartender Trust Fund*, the Ninth Circuit held that a class action met the superiority requirements of Rule 23(b)(3) where class members could recover, at most, damages in the amount of $1,330. As in *Culinary/Bartender Trust Fund*, "this case involves multiple claims for relatively small sums" and a class action clearly serves as the only method that would "'permit the plaintiffs to pool claims which would be uneconomical to litigate individually.'" *Local Joint Executive Bd. of Culinary/Bartenders Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d at 1163 (quoting *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809  (1985)). *Culinary/Bartender Trust*

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR**

**24**

1      *Fund* clearly dictates that the superiority requirements of Rule 23(b)(3) are satisfied here.

2          Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion. Ordinarily, these

3 factors are (A) the interest of members of the class in individually controlling the prosecution or

4 defense of separate actions; (B) the extent and nature of any litigation concerning the controversy

5 already commenced by or against members of the class; (C) the desirability or undesirability of

6 concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to

7 be encountered in the management of a class action. However, when a court reviews a class action

8 settlement, the fourth factor does not apply. In deciding whether to certify a settlement class action,

9 a district court "need not inquire whether the case, if tried, would present intractable management

10 problems." *Amchem Products Inc. v. Woodward,* 521 U.S. 591, 620 (1997). Here, the remaining

11 factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification.

12          First, class members have no particular interest in individually controlling the prosecution of

13 separate actions. Any class member who wants to pursue a claim for reimbursement greater than a

14 settlement payment can opt out of the Settlement.

15          Second, there will be no competing litigation regarding the statutory violations at issue. In

16 addition, the Parties are unaware of any pending related actions.

17          Finally, it is desirable to concentrate the issues in this forum because the parties reside in

18 California and the class is comprised of employees who worked for Defendant in California.

19 Instructively, Defendant did not move to transfer venue for these cases to another district.

20 Moreover, the parties have reached a Settlement. "With the settlement in hand, the desirability of

21 concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. of Iowa*, 1998

22 U.S. Dist. LEXIS 1557, *60, 1998 WL 133747, at *19 (M.D. Fla. 1998); *see also Strube v.*

23 *American Equity Inv. Life Ins. Co.,* 226 F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth Rule

24 23(b)(3) factors are "conceptually irrelevant in the context of a settlement"). The conclusion is

25 inescapable that a class action provides the most efficient mechanism for resolving all the claims of

26 the class members in this case.

27      **B.**    **The Proposed Settlement is Fair, Reasonable, and Adequate**

28

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR

25

No single criterion determines whether a class action settlement meets the requirements of Rule 23(e).  The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important.  *See Staton v. Boeing,* 327 F.3d 938, 959 (9th Cir. 2003).   "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Service Commission of City and County of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'"  *Officers for Justice,* 688 F.2d at 625.  The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961.  As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties."

Here, as shown below, the proposed settlement falls well within the range of reasonableness. The terms of the Settlement are fair and adequate. Plaintiff has engaged in extensive discovery. The Parties have conducted themselves in informed, good faith arm's-length negotiations with adequate access to necessary information, and did so with the assistance of a professional mediator experienced in wage and hour class action litigation, Jeffrey Krivis. Moreover, Class Counsel and Defendant's counsel are experienced in employment class action matters and are capable, and have assessed the claims' strengths and weaknesses, the benefits of the Settlement in a private, consensual agreement. Thus, Preliminary approval of the Settlement is appropriate.

The Parties engaged in substantial arm's length, informed negotiations to reach the proposed Settlement. Ultimately, a settlement should stand or fall on the adequacy of its terms. Extensive

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR**

**26**

formal discovery is unnecessary in determining whether a settlement agreement is fair, reasonable and adequate. *See In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 211 (5th Cir. 1981) (holding that formal discovery is no a "ticket to the bargaining table" as long as there is the "desired quantum of information necessary" to inform counsel's judgment in reach a settlement agreement). Here, the Parties engaged in significant formal and informal discovery. The court must determine whether the proposed Settlement is within the acceptable range of reasonableness without conducting an investigation tantamount to a trial on the merits. *Id.* at 212-213.

The proposed Settlement is non-reversionary and commits Defendant to (i) a maximum $1,750,000 non-reversionary settlement amount, (ii) payment of all claims administration costs (up to $33,000); (iii) payment of a court approved Class Representative Enhancement Payment (up to $15,000); (iv) payment of court approved Class Counsel Fees (up to $525,000); (v) payment of court approved Class Counsel Fees (up to $13,000), is adequate and within the acceptable range of reasonableness. These results are the product of informed, arm's length negotiations which factored in: (1) the comprehensive claims investigation conducted; (2) Defendant's available legal and factual grounds for defending the claims; (3) the risks, expenses and likely duration of further litigation; (4) the cash payment considered in light of possible defenses, to adequately and fairly provide for the alleged damages to the Class Members; (5) the uncertainties involved in achieving and maintaining class certification; (6) the burdens of proof necessary to establish liability; and (7) the probability of appeal of a favorable judgment balanced against the merits of the Plaintiff's claims.

According to the Defendant the class consists of 3,097 class members of which 1,200 are current employees and 1,897 former employees. (Lavi Decl. ¶ 20.) Defendant had provided sampling of approximately 11.8% of the class data. (*Id.*) As such, the result of the analysis was multiplied by 8.42 to get 100% damages. The average rate of pay during the class period was: $11.71.

According to Plaintiff's expert (Lavi Dec. ¶¶ 11 and 21), the sample timecards showed the following results:

| 2nd meal break violation | 32,137 |
|---|---|
| Late 1st meal breaks (after 6 hours) | 28,274 |
| Shaved time | 9,856 |

Based on this data, Plaintiff estimated the following damages for the class period:

- **Second meal break violations:** 32,137 x $11.71 x 8.42 = $3,168,650.35
- **Untimely meal break violations**: 28,274 x $11.71 x 8.42 = $2,787,765.51
- **Third rest break violations**: 32,137 x $11.71 x 8.42 = $3,168,650.35
- **Time Shaving**: 9,856 x $11.71 x 8.42 = $971,783.86
- **Inaccurate Wage Statements:** 1200 x $4,000 = $4,800,000
- **Untimely final wages**: 1,897 formers x 8 hours x 30 days x $11.71 = $5,331,328.8

As such, the maximum potential exposure is approximately $20,228,178.87. (Lavi Dec. ¶23).   However, the Court in *Johnson v. Sky Chefs, Inc.,* United States District Court, Northern District, Case No. 5:11-CV-05619 LHK preliminarily approved a class action settlement wherein all of the class members have released their California Labor Code Section 203 and 226 claims. (Lavi Dec. ¶23). As such, the maximum potential recovery was reduced to approximately $10,096,950.07.

As outlined above, and based on Plaintiff's expert analysis, the untimely meal break violation has a maximum potential recovery of approximately $2,787,765.00; the 2nd meal break violation has a maximum potential recovery of approximately $3,168,650.00, and the maximum potential recovery of the 3rd rest breaks would be approximately $3,168,650.00. (Lavi Dec. ¶22). As such, the potential maximum recovery for the meal and rest breaks in this matter would be approximately $9,125,000.00.

Defendant, however, claimed that class members' meal and rest break claims were preempted by the Airline Deregulation Act and/or Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501, *et seq.* since Defendant provides catering services to the airlines and meals and rest breaks would have a significant impact on Defendant's routes, service or prices.  If the Court agreed with Defendant's position, Plaintiff would recover **nothing** for the meal and rest break claims, therefore, limiting the maximum potential recovery to approximately $971,950.00 for the unpaid worked hours. (Lavi Dec. ¶25).

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR

28

Defendant also argued that even if the class members were not preempted by FAAAA, the class members that did not take a 2nd meal break had chosen to waive their 2nd meal breaks since the class members were informed of their right to take a 2nd meal break if they worked more than 10 hours as evidenced by the Collective Bargaining Agreement as well as the fact that some of the class members took their 2nd meal breaks.  Defendant further argued that the 2nd meal break class was a small and limited class as records show that most employees did not work shifts of ten (10) or more hours. (Dec. Lavi ¶ 24).    Therefore, if the Court agreed with the Defendant's preemption or waiver as to Plaintiff's 2nd meal break claim, the meal break would be limited to the alleged untimely meal break claim only.

Defendant, however, further argued that the untimely 1st meal break claim would require an individualized inquiry as to why the class members did not take their meal breaks on a timely basis.  As such, if the Court agreed with Defendant's position, the maximum potential recovery for the meal and the rest break violation would be limited to 3rd rest break violations only, with a maximum potential recovery of approximately $3,168,650.00.  However, Defendant argued that even the 3rd rest break class would be limited in size, as records again show that most employees did not work shifts of ten (10) or more hours and were not entitled to 3rd rest breaks.  Thus, the maximum recovery for 3rd rest break violations would be reduced even more. (Dec. Lavi ¶ 24).

Defendant also argued that the unpaid time which amounted to approximately $971,950.00, was nothing more than *de minimis*, since the average number of minutes per day would be approximately 3 minutes.  (Dec. Lavi ¶ 24).

As such, if the Plaintiff continued litigating this matter, the class member could potentially receive **nothing** if the court agreed with Defendant's position. If the court agreed with Defendant's position that the meal and rest break were preempted, the settlement reached is approximately *180%* of the potential recovery for the unpaid time ($1,750,000 / $971,950.00).   If the court agreed with Defendant's position that the meal and rest break violation should be limited to the 3rd rest break claim only, the settlement reached is approximately *55%* of the potential rest break violation ($1,750,000 / $3,168,650.00 ).   If the court rejected Defendant's FAAAA preemption argument, as

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR

29

1   well as waiver argument or that the untimely meal breaks did not involve individualized inquiry, the

2   settlement reached is approximately *19%* of the potential meal and rest break violations ($1,750,000

3   / $9,125,000.00).  (Dec Lavi, ¶25).

4         Under these circumstances, the benefits available to class members in return for releasing

5   their meal and rest break, which could be preempted, minimum and overtime wages which could be

6   deemed *de minimis* are fair and reasonable.  Given the uncertainty regarding meal and rest break

7   violations and certification of such claims, rounding/time shaving of worked hours and de minimus

8   defenses, the value negotiated by the parties represents a fair compromise well within the range of

9   reasonableness. *See In re Cendant Corp., Derivative Action Litigation,* 232 F.Supp.2d 327 (D. N.J.

10  2002) (approving settlement which provided 2% value compared to maximum possible recovery);

11  *In re Compact Disc Minimum Advertised Price Antitrust Litigation,*  216 F.R.D. 197 (D. Me. 2003)

12  (approving settlement providing $13 to class members overcharged an average of 23 cents).

13        As such, the settlement is reasonable in light of the risks involved in this case—including

14  the prospect of a potential adverse summary judgment ruling, class certification issues as well as the

15  uncertainty of class certification, defenses to the case and potential appeal.  Class Counsel is

16  convinced that the proposed Settlement is in the best interest of the class based on the negotiations

17  and a detailed knowledge of the issues present in this action. The length and risks of trial and other

18  normal perils of litigation that may have impacted the value of the claims were all weighed in

19  reaching the proposed Settlement. In addition, the affirmative defenses asserted by Defendant,

20  potential adverse summary judgment ruling, preemption, waiver, individualized inquiry, class

21  certification issues as well as the uncertainty of class certification, the difficulties of complex

22  litigation, the lengthy process of establishing specific damages and various possible delays and

23  appeals, were also carefully considered by Class Counsel in agreeing to the proposed Settlement. In

24  light of the aforementioned circumstances and the significant benefit obtained for the Class, the

25  proposed Settlement is well within the "ballpark" of reasonableness and should be granted

26  preliminary approval.

27        The compensation sought for Plaintiff's counsel is also fair and reasonable. The Ninth

28

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR**

30

Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should use a "benchmark" percentage of 25% of the total fund. *Paul, Johnson, Alston & Hunt v. Graulty* 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Accordingly, Plaintiff's counsel' fee request of 30% is fair and reasonable fee. The Gross Settlement Amount obtained through the efforts of Plaintiff's counsel is $1,750,000.00.  Plaintiff's counsels understand that the Court may not award more than the 25% benchmark at the time of final approval.  Plaintiff's counsel is also seeking $13,000 for costs, which were primarily expert and mediation costs.

Although Plaintiffs will provide the Court with information for the purposes of calculating attorney fees under the lodestar method should the Court so desire, Plaintiff submits that an attorney fee award based on a lodestar calculation would not be appropriate in this case. Several courts have expressed frustration with the lodestar approach for deciding fee awards, which usually involves wading through voluminous and often indecipherable time records. Commenting on the lodestar approach, Judge Marilyn Hall Patel wrote in *In re Activision Securities Litigation,* 723 F. Supp. 1373, 1375 (N.D. Cal 1989):

> [T]his court is compelled to ask, "Is this process necessary?" Under a cost-benefit analysis, the answer would be a resounding, "No!" Not only do the *Lindy* and *Kerr-Johnson* analyses consume an undue amount of court time with little resulting advantage to anyone, but in fact, it may be to the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fee petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a lodestar approach, there is little incentive to arrive at an early settlement. The history of these cases demonstrates this as noted below in the discussion of typical percentage awards. Adoption of a policy of awarding approximately 30% of the fund as attorneys' fees in the ordinary case is well-justified in light of the lengthy line of cases which find such an award appropriate and reasonable before or after superimposing the *Lindy* or *Kerr* factors.

*In re Activision Securities Litigation,* 723 F. Supp. at 1375.

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR

31

The Ninth Circuit has similarly recognized that the lodestar method "creates incentives for counsel to spend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino v. Microsoft Corp.,* 290 F.3d at 1050, n.5. The Ninth Circuit has thus cautioned that, while a lodestar method <u>can</u> be used as a cross check on the reasonableness of fees based on a percentage of recovery method if a district court in its discretion chooses to do so, a lodestar calculation is not required and it did "not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly." *Id.*

In accordance with Ninth Circuit precedents, district courts within the Ninth Circuit have recognized that a lodestar cross check need not be performed where plaintiff's counsel achieves a significant result through an early settlement. For example, in *Glass v. UBS Financial Services, Inc.*, 2007 U.S. Dist. LEXIS 8476, *44-45, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) the court declined to conduct a lodestar cross check, and approved a request for fees based only on the percentage of recovery method, because it recognized that premising attorney's fees on a lodestar calculation would have unfairly penalized plaintiff's counsel for settling the case without protracted litigation. *See also In re Mfrs. Life Ins.,* 1998 WL 1993385, *10 (S.D. Cal. 1998) (court concluded that lodestar analysis was unnecessary and attorney's fee was reasonable solely on percentage-recovery method).

If Plaintiff's counsel spends significantly less time on this case prior to final approval than would result in a low lodestar multiplier, a lodestar calculation would conflict with the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litigation,* 516 F.3d 1095, 1101 (9th Cir. 2008). Moreover, a lodestar calculation under these circumstances would undermine the equitable considerations that dictate the percentage of recovery method for calculating attorney's fees in common fund cases. The percentage of recovery method "rests on the presumption that persons who obtain benefits of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Staton v. Boeing,* 327 F.3d at 967. This rule, known as the "common fund doctrine," is designed to

1    prevent unjust enrichment by distributing the costs of litigation among those who benefit from the

2    efforts of the litigants and their counsel. *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d at 271.

3        It is only fair that every class member who benefits from the settlement pay his or her pro

4    rata share of attorney's fees, and Plaintiff's request for fees at the rate of 30% is reasonable. Plaintiff

5    seeks fees less than the amount Plaintiff's counsel would be entitled to if they represented each class

6    member individually under a regular contingent fee contract. It would be unfair to compensate

7    Plaintiff's counsel at a lesser rate because they obtained relief for more than 3,000 class members.

8    To the contrary, equitable considerations dictate that Plaintiff's counsel be rewarded for achieving a

9    settlement that confers benefits among so many people, especially without protracted litigation. The

10   excellent result achieved by Plaintiff's counsel merits an award of attorney's fees equal to 30% of

11   the common fund in this case.

12       Finally, the incentive payment to Plaintiff is reasonable. Incentive payments serve to reward

13   named plaintiff for the time and effort expended on behalf of the class, and for exposing themselves

14   to the significant risks of litigation. "Courts routinely approve incentive awards to compensate

15   named plaintiffs for the services they provided and the risks they incurred during the course of the

16   class action litigation." *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re*

17   *Southern Ohio Correctional Facility,* 175 F.R.D. 270, 272 (S.D. Ohio 1997). In *Coca-Cola,* for

18   example, the court approved incentive awards of $300,000 to each named plaintiff in recognition of

19   the services they provided to the class by responding to discovery, participating in the mediation

20   process and taking the risk of stepping forward on behalf of the class. *Coca-Cola,* 200 F.R.D. at

21   694; *see also Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving

22   $50,000 participation award). Here, Plaintiff seeks an incentive award of less than 1% (0.86%) of

23   the total settlement amount or $15,000 for his relentless dedication in prosecuting this matter as

24   well as having to provide the Defendant with a general release including all FEHA claims.

25       **C.    The Class Notice**

26       Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must

27   direct to class members the "best notice practicable" under the circumstances. Rule 23(c)(2)(B) does

28

not require "actual notice" or that a notice be "actually received." *Silber v. Mabon,* 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Here, the parties have agreed to provide notice through first class mail, in English and Spanish to class members, whose last known addresses are known to Defendants. This method of notice clearly suffices. Rule 23(c)(2)(B) also sets forth requirements regarding the content of the notice. The notice must concisely and clearly state in plain, easily understood language:

- the nature of the action;
- the definition of the class certified;
- the class claims, issues, or defenses;
- that class member may enter an appearance through counsel if the member so desires;
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

Here, the proposed notice attached as Exhibit "3" to the Declaration of Joseph Lavi, filed concurrently herewith, complies fully with Rule 23(c)(2)(B). Courts routinely approve class notices even when they provide only general information about a settlement. *See, e.g., Mendoza v. United States,* 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed settlement" sufficient); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice "need only describe the terms of the settlement generally.") The class notice drafted by the parties provides more than adequate notice about the Settlement.

## VI. THE COURT SHOULD SCHEDULE A FAIRNESS HEARING

The last step in the settlement approval process is the fairness hearing, where members of the Settlement Class who timely submit objections to the Settlement may be heard, and the court makes a final determination about the propriety of settlement. Based on the timetables for giving notice and submitting objection to the Settlement, Plaintiff request that the fairness hearing in this case be scheduled for at least 150 days after preliminary approval of the Settlement is granted.

## VII. CONCLUSION

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CASE NO. C-12-02705 DMR

34

The parties reached a fair compromise that does not excessively reward class members for weak claims, or sell them short for strong claims. Since the Settlement is fair, reasonable and adequate in all respects, the Court should grant Plaintiff's motion for preliminary approval of the Settlement in its entirety and adopt the proposed order submitted herewith.

Dated: June 27, 2014                          Respectfully submitted,
                                              **LAVI & EBRAHIMIAN, LLP**


                                              By:  ___/s/ Joseph Lavi, Esq._____
                                                   Joseph Lavi, Esq.
                                                   Jordan D. Bello, Esq.
                                                   Attorneys for PLAINTIFF CESAR CRUZ and
                                                   others similarly situated