UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR CRUZ, | No. C-12-02705 DMR |
| Plaintiff(s), | **ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING IN PART MOTION FOR INCENTIVE AWARD; GRANTING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS [DOCKET NOS. 91, 92, 93]** |
| v. | |
| SKY CHEFS, INC. ET.AL., | |
| Defendant(s). | |

Plaintiff Cesar Cruz moves for final approval of a class action settlement, an incentive award for the named Plaintiff, and attorneys' fees. [Docket Nos. 91, 92, 93.] Defendant Sky Chefs, Inc. does not oppose the motion. The court conducted a Final Approval Hearing on this matter on December 18, 2014. For the reasons stated below, Plaintiff's motion for final approval of the class action settlement is **granted**, and Plaintiff's motions for an incentive award and for attorneys' fees are **granted in part and denied in part.**

## I. BACKGROUND

**A.    Litigation History**

Sky Chefs, a business which provides in-flight food and beverage catering services to numerous airline carriers within the United States, hired Plaintiff Cesar Cruz ("Plaintiff") in July 1996 as an assembler. Murray Decl. [Docket No. 38-1] at ¶¶ 2, 6. Plaintiff filed this putative class action on March 16, 2012 in Alameda County Superior Court. [*See* Docket No. 1 at 2.] On May 23, 2012, Plaintiff filed an amended complaint stating nine California state law causes of action against Defendant and LSG Lufthansa Service Holding AG, dba LSG Sky Chefs.[1] On May 25, 2012, Sky Chefs removed the case to federal court, basing federal jurisdiction on the Class Action Fairness Act, 28 U.S.C. § 1332(d). Notice of Removal [Docket No. 1]. On October 5, 2012, Defendant moved to dismiss the amended complaint; the court denied the motion to dismiss on December 21, 2012. [Docket Nos. 20, 30.] On January 16, 2013, Plaintiff filed a second amended complaint. On February 21, 2013, Defendant moved to dismiss the second amended complaint; the court denied the motion to dismiss on May 6, 2013. [Docket Nos. 38, 50.]

Plaintiff filed a third amended complaint ("TAC"). [Docket No. 72.] The TAC, which is the operative complaint, brings ten causes of action against Defendant: (1) failure to pay wages for compensable work at minimum wage pursuant to California Labor Code §§ 1194 and 1197, (2) failure to pay earned wages for compensable time in violation of California Labor Code § 204, (3) failure to pay overtime wages at the proper rate under California Labor Code §§ 510 and 1194 and California Industrial Welfare Commission Wage Order 9-2001 (the "wage order"), (4) failure to provide required meal periods pursuant to California Labor Code §§ 226.7 and 512 and the wage order, (5) failure to provide timely meal periods in violation of California Labor Code §§ 226.7 and 512 and the wage order, (6) failure to provide more than two rest periods in violation of California Labor Code §§ 226.7 and 512 and the wage order, (7) failure to provide complete and accurate wage statements in violation of California Labor Code § 226, (8) failure to pay all wages timely upon separation of employment in accordance with California Labor Code §§ 201 and 202, (9) unfair competition in violation of California Business and Professions Code § 17200, and (10) a request for civil penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA"), California

---

[1] LSG Lufthansa Service Holding AG dba LSG Sky Chefs has since been dismissed from this action. *See* Docket No. 49.

Labor Code § 2698 *et seq*. TAC at ¶¶ 37-112. The fifth and sixth claims were not in the previous complaint and apparently were added during the settlement negotiations.

### B. Discovery and Mediation

The parties have engaged in formal and informal discovery. Lavi Decl. [Docket No. 91-1] ¶¶ 6-7. Plaintiff propounded written discovery. *Id.* at ¶ 7. In response, Defendant produced information regarding class data, including putative Class Members' payroll records, timesheets, and other payroll information. *Id.* Defendant also disclosed policies and procedures related to meal and rest breaks, work time, recording time, and other workplace policies applicable to Plaintiff's class claims. *Id.* Plaintiff's counsel interviewed Plaintiff, reviewed documents, and reviewed and analyzed the provided policies, procedures, and data. *Id.* at ¶ 8. The parties also agreed to conduct informal discovery wherein Defendant provided Plaintiff with a random sampling of class members' timecards during the class period. Lavi Decl. Second Prelim. Approval [Docket No. 83] at ¶¶ 7-8.

After a period of discovery, the parties participated in a day-long mediation on June 5, 2013, before Jeff Krivis, Esq. Lavi Decl. at ¶ 6. The parties were not able to reach a settlement at the mediation. *Id.* After the mediation, the parties continued to negotiate, with the assistance of the mediator, and agreed to the terms of the settlement approximately ten weeks after the mediation. *Id.* Plaintiff then filed his first unopposed motion for preliminary approval of a class action settlement, which the court denied. *See* Docket Nos. 65, 81. Plaintiff subsequently filed a second unopposed motion for preliminary approval of a class action settlement, which the court granted. *See* Docket Nos. 82, 90.

## II. THE SETTLEMENT AGREEMENT

The complete terms of the proposed settlement agreement are set forth in the Stipulation and Settlement Agreement ("Agreement"). *See* Lavi Decl. Second Prelim. Approval Ex. 1. The Agreement provides for a principal settlement class defined as follows:

> "Class" or "Class Member" or "Class Members" means any current or former hourly, non-exempt employee of Sky Chefs who performed paid work for Sky Chefs in California from March 16, 2008 up to December 12, 2013, or if such person is incompetent or deceased, the person's guardian, executor, heir or successor in interest.

3

Agreement at 3.

**A. Settlement Amount and Release of Claims**

Under the terms of the settlement, in exchange for a release of claims against Defendant, Defendant will pay a Gross Settlement Amount of $1,750,000. The Gross Settlement Amount is non-reversionary[2] and shall include participating Class Members' claims and payroll taxes, Class Counsel Fees and Costs, Enhancement Payment to Class Representative Plaintiff, payment to the Labor and Workforce Development Agency (LWDA) for PAGA penalties, and Settlement Administration Costs. Agreement at 18:4-21:16.

The total portion of the Gross Settlement Amount to be paid to "Authorized Claimants," or Class Members who file a valid and timely Claim Form with the Settlement Administrator to register their claim for a Settlement Payment,[3] will be equal to the Gross Settlement Amount less (1) Class Counsel Fees and Costs, (2) Enhancement Payment, (3) LWDA Payment, and (4) Settlement Administration Costs, which would result in a total class payout of approximately $1,156,500[4] ("Distributable Amount"). Agreement at 2:17-19, 19:1-8. Each of these deductions is explained in greater detail below.

**1. Class Counsel Fees and Costs: $525,000**

The Agreement states that Class Counsel will request payment of $525,000 for Class Counsel Fees and an amount not to exceed $13,000.00 for Class Counsel Costs. Agreement at 21:25-22:5. As discussed below, Plaintiff's counsel actually seeks less in attorneys' fees ($437,500) than stated in the Agreement.

**2. Settlement Administration Costs: $33,000**

The parties selected CPT Group, Inc., to act as Settlement Administrator in this action. The

---

[2] The settlement is "non-reversionary" because the entire Distributable Amount will be distributed to only Authorized Claimants and any settlement checks remaining un-cashed 180 calendar days after issuance will be void and escheated to the State of California pursuant to the California Code of Civil Procedure Section 1513. Agreement at 23:23-26.

[3] "Settlement Payment" refers to the payment to any Authorized Claimant pursuant to the terms of the Agreement. Agreement at 9:11-9:12.

[4] Since, as discussed below, Class Counsel seeks a smaller amount of attorneys' fees than it initially anticipated, the Distributable Amount as calculated by Plaintiffs is approximately $1,244,000.

4

Agreement contemplates an amount not to exceed $33,000 to compensate all reasonable costs incurred by the Settlement Administrator in the administration of the Agreement.

**3. Representative Plaintiff Enhancement: $15,000**

Plaintiff has made an application for $15,000 as an enhancement for his time and effort in prosecuting the matter, as well as compensation for his general release pursuant to California Civil Code Section 1542.

**4. LWDA Payment: $10,000**

Under the Agreement, $10,000 is allocated to penalties paid to the LWDA in satisfaction of claims for penalties owed to the agency under the PAGA, with 25% of the amount to be distributed to the Class Members. Agreement at 18:21-18:24; *see also* Cal. Labor Code § 2699(i).

The calculation of the Distributable Amount is summarized below:

> Gross Settlement Amount: $1,750,000.00
> (minus) Class Counsel Fees: $437,500.00
> (minus) Class Counsel Costs: $13,000.00
> (minus) Estimated Settlement Administration Costs: $33,000.00
> (minus) Enhancement Payment: $15,000.00
> (minus) 75 % of LWDA Payment: $7,500.00

**= Estimated Amount Distributable to Class: $1,244,000**

**B. Formula for Determining Individual Settlement Payments**

The Settlement Payment for individual class members is based on each employee's amount of "Qualifying Gross Wages," which is adjusted based on whether the Class Member received lead pay or shift differential pay. The Qualifying Gross Wages is calculated differently depending on whether the Class Member received lead pay or shift differential pay.

For Class Members who received lead pay or shift differential pay, the Qualifying Gross Wages is the total gross W-2 wages earned by that Class Member for hourly, non-exempt work during the Class Period as reflected by Defendant's payroll records.

However, to account for the more tenuous claim based on payment of lead or shift differential pay, any Class Member who did not receive lead pay or shift differential pay during the Class Period will have their total gross W-2 wages multiplied by two to derive that individual's Qualifying Gross Wages.

1    The Settlement Administrator calculated the total Qualifying Gross Wages earned during the Class Period by all Authorized Claimants.  Each Authorized Claimant's Settlement Payment is based on their individual Qualifying Gross Wage amount divided by the total Qualifying Gross Wages for all Authorized Claimants multiplied by the Distributable Amount.  Eighty percent will be designated as wages, to be reported on an IRS W-2 Form with legally required tax deductions, and twenty percent will be designated as interest reportable on IRS Form 1099.

Any and all employer and/or employee taxes arising from any payment to the Class shall be calculated and paid from the Distributable Amount by the Settlement Administrator.  Each Class Member shall be responsible for any tax consequences of the Settlement or payment of funds pursuant to this Agreement, including the payment of any applicable tax deductions or obligation as if paying through payroll.

**C. Class Notice and Claims Procedure**

Class Members received notice pursuant to the court's order granting preliminary approval of the class action settlement.  [Docket No. 90.]  The claims process is now complete.

Plaintiff's motion for final approval of the settlement agreement includes a declaration from the class action claims administrator.  *See* Shirinian Decl. [Docket No. 91-1].  On August 28 and September 3, 2014, the claims administrator received the class list from Defendant.  *Id.* at ¶ 5.  On September 10, 2014, the claims administrator performed a National Change of Address search, and on September 18, 2014, mailed the Notice packages to all 2,995 class members.  *Id.* at ¶ 7.  On October 31, 2014, the claims administrator mailed reminder postcards to the 2,388 Class Members who had not yet submitted a response.  *Id.* at ¶ 8.  As of November 24, 2014, there were no objections, four Requests for Exclusions, and fourteen deficient claims caused by submission of incomplete Claim Forms.  *Id.* at ¶¶ 12, 17, 18.  The claims administrator mailed out deficiency letters to these Class Members with instructions on how to cure the deficiencies.  *Id.* at ¶ 14.

Assuming the deficient claims are cured, a total of 896 Class Members have elected to participate in the settlement, representing 52.19% of the net Settlement Amount and 29.92% of the total Class Members (296 out of 2995).  *Id.* at ¶ 18.

The average settlement payment per valid claimant is $1,290.74.  *Id.* at ¶ 19.  The highest

estimated settlement payment is $5,040.62.[5] *Id.*

## III. DISCUSSION

**A. Class Certification**

For the reasons set forth in the court's earlier order, the court finds that the proposed settlement class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3). *See* Docket No. 81 at 8-11.

**B. Final Approval of Class Action Settlement**

    **1.    Legal Standard**

Federal Rule of Civil Procedure 23(e) provides that a class action may not be settled without court approval. "If the proposal would bind class members, the court may approve it only after a hearing and on a finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). Approval under Rule 23 involves a two-step process: (1) preliminary approval of the settlement; and (2) final approval of the settlement at a fairness hearing following notice to the class. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

The primary concern of Rule 23(e) is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of the City &Cnty. of San Francisco,* 688 F.2d 615, 624 (9th Cir. 1982). To assess a proposed settlement, courts balance the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Not all of these factors will apply to every class action settlement, and in certain circumstances, "one factor alone may prove determinative in finding sufficient grounds for

---

[5] At the hearing, Plaintiff's counsel provided updated figures regarding the claims rate and value of the payments. According to counsel, there are still four opt-outs and no objections. In addition, seven of the deficient claims have been resolved, bringing the total number of valid claims to 903.

court approval." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 525 (citing *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993)). [Find cite that says that pre-class cert approval is more rigorous than post] The district court's role in evaluating a proposed settlement is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or collusion between the negotiating parties, and that the settlement is fair as a whole. *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009). It is neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms. *Officers for Justice,* 688 F.2d at 625; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety."). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [the judge] is exposed to the litigants and their strategies, positions, and proof." *Id.* (citation and quotation marks omitted). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Officers for Justice*, 688 F.2d at 625.

### 2. Balancing of Factors

The court has evaluated the proposed settlement for overall fairness under the relevant factors and concludes that settlement is appropriate. The parties reached the proposed settlement after more than two and a half years of litigation, with some formal and informal discovery completed. The $1,750,000 gross settlement amount, which represents 8.6% of the maximum potential recovery from the class claims, fairly reflects the risks in going forward on those claims. *See* Lavi Decl. Second Prelim. Approval at ¶¶ 23-27 (explaining how settlement in contemporaneous case and Defendant's potential preemption arguments and other defenses lowered value of class claims and raised risks of going forward). The amount offered in settlement provides real benefits to the class on a much shorter time frame than otherwise would be possible. The parties benefitted from the assistance of an experienced mediator.

Further, the reaction of class members to the proposed settlement favors approval. The class notice was delivered to 2,995 email addresses and no class members objected. There were only four opt-outs. A court may appropriately infer that a class action settlement is fair, adequate, and

reasonable when few class members object to it. *See, e.g., Churchill Village*, 361 F.3d at 577 (upholding district court's approval of class settlement with 45 objections and 500 opt-outs from a class of 150,000). The relatively robust response rate to the settlement of approximately 30% suggests that the settlement, as a whole, is not fair, reasonable, and adequate. *See, e.g., Moore v. Verizon Commc'n Inc.*, No. C 09-1823 SBA, 2013 WL 4610764, at *8 (N.D. Cal. Aug. 28, 2013) (granting final approval of class action settlement with 3% claims rate). As class members' overall view of the settlement appears to be positive, on balance, the court concludes that the relevant factors weigh in favor of a finding that the settlement is fair, reasonable, and adequate. The court therefore grants final approval of the settlement.

### C. Plaintiff's Incentive Award

Along with his motion for final approval of the settlement of this matter, Plaintiff moves for a $15,000 incentive award. [Docket No. 92.] Defendant does not object.

The incentive award Plaintiff requests is triple the amount which is presumptively reasonable in this District. *See, e.g., Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, No. C 07-0362 MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009) (rejecting a request for a $25,000 incentive payment as "quite high for this district, in which a $5,000 payment is presumptively reasonable.").

Plaintiff's declaration states that he has "actively participated in this lawsuit for the last 36 months" by (1) visiting in the Employment Development Department in San Francisco, (2) contacting the Department of Industrial Relations, and the United States Equal Employment Opportunity Commission, (3) attending a workshop at a consulate in San Francisco regarding his wage claims, and (4) meeting with different representatives of his local union. None of these activities, which took approximately 26 hours, resulted in contacts that were able to assist Plaintiff in his claims. Cruz Decl. [Docket No. 91-1] at ¶ 8.

Plaintiff then searched for and met with different attorneys before hiring his current counsel. After hiring his attorneys, he collected and gathered documents and information (including the union agreement, paychecks, wage statements, and pay stubs), explained the information, regularly communicated with his attorneys "to find out about developments in this matter," and traveled from the Bay Area to Southern California at least three times to explain Defendant's policies and

procedures to his attorneys.  Plaintiff notes that because English is his second language, many of the documents and conversations had to be translated, which caused Plaintiff to spend more time on the case.  *Id.* at ¶ 9.  These tasks took approximately 78 hours.  Plaintiff estimates that he has spent, in total, 104 hours on this matter.

In addition, Plaintiff undertook a financial risk that, in the event of judgment in favor of Defendant, he may have been personally responsible for any costs awarded to Defendant.  *Id.* at ¶ 11.  *See also Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 5402120, at *7 (N.D. Cal. Sept. 26, 2013).  Plaintiff also provided Defendant with a general release of, inter alia, any age discrimination claims that Plaintiff may have had since speaking with the Equal Employment Opportunity Commission, and agree to a no rehire provision. Cruz Decl. at ¶ 11.  Plaintiff's counsel also argues that Plaintiff's requested incentive award is reasonable in light of the fact that on average the class members will receive $1,290.74.[6]  Lavi Decl. at ¶ 25.  *See also Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *37 (N.D. Cal. Apr. 1, 2011) (considering "whether the incentive payments are proportional to the Settlement Amount.").

Although Plaintiff has explained how he provided assistance to his counsel and contributed to achieving this result for class members, the court is not persuaded that Plaintiff's efforts warrant the $15,000 incentive award he seeks.  Some of the work he put into the case appears to have been aimed at developing his own claims.  As to the rest, the tasks, sacrifices, and risks that Plaintiff describes are typical of those for a plaintiff in a similar class action lawsuit.  Plaintiff was not deposed and did not attend the mediation because he could not be absent from work.  The court finds that the record supports an incentive payment of $7,000 to Plaintiff.

**D.    Motion for Attorneys' Fees**

    **1.    Request for Attorneys' Fees and Costs**

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, courts "have an independent obligation to ensure that the award, like the

---

[6] Plaintiff is projected to receive $926 for his claim.

settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted). Where, as here, the settlement of a class action creates a common fund, the court has discretion to award attorneys' fees using either the lodestar method or the percentage of the fund approach. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The percentage of the fund is the typical method of calculating class fund fees. *See id.* at 1050 (noting "the primary basis of the fee award remains the percentage method"). The Ninth Circuit has established 25% of the common fund as the "benchmark" for attorneys' fees, with 20-30% as the usual range. *Id.* at 1047. However, the "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Even when applying the percentage method, the court should use the lodestar method as a cross-check to determine the fairness of the fee award. *Vizcaino*, 290 F.3d at 1050. "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005) (footnote and citation omitted). The court's selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case, including the result achieved, the risk involved in the litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar cross-check. *Vizcaino*, 290 F.3d at 1048-50.

Plaintiff seeks 25% of the gross settlement amount, or $437,500. Plaintiff contends that 25% of the common fund is the benchmark for attorneys' fees awards in this district. This amount is significantly higher than Plaintiff's lodestar figure of $269,275.

Plaintiff initially sought preliminary approval of the proposed settlement in November 2013 on a record that this court called "sparse and largely conclusory." In its order denying Plaintiff's first motion for preliminary approval of the settlement, the court noted several specific deficiencies in Plaintiff's valuation of the claims. The court stated:

> The court is not finding that the proposed settlement is unfair. This class recovery may turn out to be fair in the end analysis. But, as the court admonished class counsel when it ordered supplemental briefing, class counsel must provide more information for the court to review in order to determine whether absent class members would be receiving a reasonable settlement in view of the risks and rewards of continuing litigation. The court cannot make that determination on the current sparse and largely conclusory record. This is especially true in light of what appears to be the last minute addition of two class claims during the settlement process that were not subject to vigorous discovery and analysis.

Docket No. 81 at 13-14 (citations omitted). After the court denied preliminary approval, Plaintiff filed a second motion for preliminary approval that added a modicum of additional detail to Plaintiff's analysis. Notwithstanding the court's eventual approval of the settlement, the court remains concerned with the quality and thoroughness of counsel's efforts in this matter. Rather than provide new analysis or argument to address the court's concerns, Plaintiff's motion simply recycles his analysis from Plaintiff's motions for conditional approval of the class settlement. At the hearing, Plaintiff's counsel stated that Plaintiff's attorneys avoided discovery in order to minimize the risk of providing evidence for Defendant's potential preemption arguments, thus admitting that it was counsel's strategic decision to leave the facts undeveloped through limited discovery. The court's unanswered concerns about the amount of work Plaintiff's counsel put into this litigation to obtain a fair deal for the class, and the fact that the requested attorneys' fees award is 1.63 times the lodestar amount constitute circumstances that persuade the court that the request for a 25% benchmark award is not justified. Accordingly, the court awards class counsel $300,000 in attorneys' fees, which reflects a 1.12 multiplier on the lodestar, and represents 17% of the total class recovery.

In addition, the court awards class counsel $12,764.72 in costs incurred as of December 2, 2014. *See* Fed. R. Civ. P. 23(h); *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement).

//
//
//
//
//

## IV.  CONCLUSION

For the reasons stated above, Plaintiff's motion for final approval of a class action settlement is **granted**.  The court also awards Plaintiff **$300,000** in attorneys' fees and **$12,764.72** in costs.  Finally, the court awards Plaintiff **$7,000** as an incentive award.[7]

IT IS SO ORDERED.

Dated: December 19, 2014



DONNA M. RYU
United States Magistrate Judge

---

[7] The difference between the requested and actual fee award shall be added to the gross settlement amount for distribution to class members pursuant to the formula set forth in the Agreement.

13